JOHN H. THOMAS ET AL V. STANOLIND OIL AND GAS COMPANY ET AL.

No. A-650. Decided May 15, 1946.
Rehearing overruled November 27, 1946.
(198 S. W., 2d Series, 420.)

*Grover Sellers,* Attorney General, *J. C. Davis,* Assistant Attorney General, for the Railroad Commission, *Looney & Clark* and *Everett L. Looney,* of Austin, for Thomas, petitioners.

The trial in this cause should have been stayed under the

provisions of soldiers and sailors act, during the period while Thomas was absent in the actual service of the army. Vaughn v. Charpiot, 213 S. W. 950; Bridges v. Williams, 171 S. W. (2d) 372; Burke v. Hyde Corporation, 173 S. W. (2d) 364.

The plaintiff and intervenor in this case failed to show that there was no evidence before the Commission authorizing the issuance of the permit to drill well number four as a measure to prevent waste and confiscation. Railroad Commission v. Shell Oil Co., 139 Texas 66, 161 S. W. (2d) 1022; Trapp v. Atlantic Refining Co., 169 S. W. (2d) 797; Stanolind Oil & Gas Co. v. Sklar Oil Co., 179 S. W. (2d) 376.

*Turner, Rodgers & Winn* and *Frank J. Scurlock*, of Dallas, for Stanolind Oil and Gas Co. and Tide Water Associated Oil Co., and *Dan Moody* and *J. B. Robertson*, of Austin, for Shell Oil Co., respondents.

The trial court did not abuse his discretion in overruling the motion of defendant Thomas to stay the proceeding during the period of his service in the army, because the mere filing of a motion to that effect is insufficient, and the burden does not rest upon the plaintiff to show that defendant would not be prejudiced by the trial. Boone v. Lightner, 319 U. S. 561, 63 Sup. Ct. 1223; Midas Oil Co. v. Stanolind Oil and Gas Co., 142 Texas 417, 179 S. W. (2d) 243; Magnolia Pet. Co. v. Edgar, 62 S. W. (2d) 359.

The well in question was not needed to prevent waste or confication. Byrd v. Shell Oil Co., 178 S. W. (2d) 573; Railroad Commission v. Gulf Production Co., 134 Texas 122, 132 S. W. (2d) 254; Gulf Land Co. v. Atlantic Ref. Co., 134 Texas 59, 131 S. W. (2d) 73.

MR. JUSTICE HICHMAN delivered the opinion of the Court.

In this case the trial court rendered judgment cancelling a permit issued by the Railroad Commission to Jno. J. Thomas to drill a second well on a 3.33-acre tract of land in the East Texas oil field as an exception to Rule 37 in order to prevent waste and confiscation and enjoining further production from the well theretofore drilled under the permit. The Court of Civil Appeals affirmed the trial court's judgment. 188 S. W. (2d) 418. The 3.33-acre tract is the middle one-third of a 10-acre tract which had been voluntarily subdivided and the well covered by the permit was regarded by the Commission and by the Court of Civil Appeals as a fourth well on the 10-acre tract rather than as a second well on the 3.33-acre tract and it will be so regarded here.

This case involves the application of the substantial evidence rule as announced in Gulf Land Company v. Atlantic Refining Co., 134 Texas 59, 74; 131 S. W. (2d) 73, 82, in this language:

"* * * The Court, on appeal from the Commission's order, should not set aside an order of the Commission either granting or refusing to grant a well permit unless such order is illegal, unreasonable, or arbitrary. In so far as the fact findings upon which the order is based are concerned, the order is not illegal, unreasonable, or arbitrary if it is reasonably supported by substantial evidence. Stated in another way, the court does not act as an administrative body to determine whether or not it would have reached the same fact conclusion that the Commission reached, but will consider only whether the action of the Commission in its determination of the facts is reasonably supported by substantial evidence."

■■ A proceeding of this nature is not comparable to a proceeding in an ordinary civil suit in which the fact findings of a jury are attacked on the ground of the insufficiency of the evidence to sustain them. In that proceeding trial courts and courts of civil appeals are clothed with the authority, not possessed by this court, to set aside such findings if they are thought to be against the great weight and overwhelming preponderance of the evidence. But those courts are not clothed with authority to set aside facts findings of an administrative agency made within the scope of its statutory powers on that ground. The Legislature has clothed administrative agencies with special powers to perform special functions and in reviewing fact findings of such agencies no question of the preponderance of the evidence is involved. The question is whether or not there is any substantial evidence affording reasonable support for such findings and the orders entered thereunder. That is a question of law of which this court, along with the lower courts, has jurisdiction and in the exercise of that jurisdiction we consider the record before us.

Mr. Gordon Griffin, an experienced petroleum engineer familiar with the East Texas field and with the particular area involved, testified in detail concerning the conditions under and surrounding the 10-acre tract. He gave it as his opinion that it was necessary that this fourth well be drilled on the 10-acre tract in order to give that tract an equal opportunity of producing its fair share of oil underlying the area; that the drilling of such fourth well will result in recovering a substantial amount of oil which would not otherwise be recovered from

those sands; that the sands underlying this 10-acre trace are less permeable than those in the field as a whole and less permeable than the Dollahite lease adjoining it; that in his opinion the sand conditions underlying this area are different from those in the remaining part of the field and such conditions require more dense drilling in order to recover the oil in place than is required in the field as a whole; that on the 40 acres immediately adjacent to the 10 acres in question and consisting of four tracts of 10 acres each bounding it on each side there are 16 wells, which is an average of four wells to each 10-acre tract; that this would be a comparable density to the density on the 10 acres if the fourth well were permitted to be drilled and to produce; that drilling had been concentrated around this 10-acre tract; that there are 19 wells in the eight times area, 16 of which are in the four times area; that all of the 16 wells are offset wells to the 10-acre tract; that normally, with 3 wells on that tract, there should be 12 offsets and with 4 wells thereon there should be 14 offsets. In answer to a question as to whether he agreed with the opinion of another expert witness that the four times area did not reflect a clear picture of the comparable situation to determine the necessity of additional wells on the 10 acres, he testified:

"A. No, I do not, for this reason; that where you have an eight times area and a four times area and in the eight times area you have only three more wells than you have in the four times area, surely by concentrated drilling around the applicant's tract, the four times area should be considered because you should actually consider the area where the wells are.

"Q. In the four times area as you have described it does it come more clearly to reflecting the comparable basis to determine whether or not there is an equal opportunity to produce oil or does the eight times area reflect more nearly the comparable basis to determine whether or not there is the equal opportunity of producing oil?

"A. In my opinion the four times area because you should consider the area where the wells are located.

"Q. State whether or not there is any rule of thumb that you know of that can be used in each and every case that is presented with respect to the necessity for or lack of necessity for additional wells in order to have an equal opportunity to product oil?

"A. No, you must consider as many of the facts as possible in order to arrive at a fair comparison."

It is shown without contradiction that the water drive in this field is from the west toward the east; that the 10 acres in question is located in the eastern portion of the field; that as the oil is extracted from the leases in the eastern portion it is replenished by the migrated oil from the west with the result that there was as much oil under the lease in question at the time of trial as had been there in place originally, and that there had been no damage except loss of recoverable migrated oil. In this respect the 10-acre lease has no advantage over the other leases on the east side of the field, for they are also being replenished in the same manner. The overall picture is this: On the basis of the eight times circular area the 10 acres in question is at no disadvantage in density of drilling, but in the four times area it is at a disadvantage without the additional well. As observed in Miller v. Railroad Commission of Texas, 185 S. W. (2d) 223, the average density of the eight times surrounding area has never been accepted as a conclusive criterion on the issues of drainage and confiscation. The system of considering the density of the eight times area is but an aid to be considered along with other conditions. We quote from the case last cited:

"* * * Obviously, if in a given area delineated by a circle, the major portion of the total number of wells within it are located in a single segment, composing for example only 1/4 of the circle, mere numbers would afford no reliable criteria of density for the entire area. Hence density based purely on numbers in an overall area may or may not be of value on the issue of drainage to or from a given tract."

■■ Respondents are attacking the permit issued by the Commission and the burden resting upon them is well stated in Shell Oil Co. v. Trapp, 169 S. W. (2d) 1010, 1012, in this language:

"* * * This proceeding is under the settled rule that on the issue of confiscation the burden is upon the one attacking the permit to show that without the well in question the tract involved has already been accorded an equal opportunity with the surrounding leases to recover its fair share of oil lying in place beneath the tract, or its equivalent, which means all oil originally beneath the land, and all oil which has migrated thereto under the laws of nature, and oil which may be necessary to compensate for oil drained from the tract by wells on adjacent leases."

■ It will be presumed that all of the wells in this area were

drilled under valid permits and that, therefore, this action of the field has been developed orderly. The Commission has issued to Thomas a permit under which this system of development in this particular area is harmonized and it seems clear to us that courts should not hold such permit invalid. Our conclusion is that the permit should be upheld.

■ We cannot agree that this case is ruled by Miller v. Railroad Commission, 185 S. W. (2d) 223 (error refused) and that on authority thereof the judgment below should be affirmed. In that case the Commission denied two applications for permits, one for well No. 2 on an .81-acre tract and the other for wells 9 and 10 on a 4.18-acre tract, both within the city limits of Kilgore. It was contended that the Commission and the courts had adopted the eight times area rule as a rule of comparison and to deny the applications would be a discrimination against Miller amounting to a confiscation of his property. The facts in that case were very unusual. The City of Kilgore had been drilled densely because of the diversity of ownership of many small lots. What was held in that case was that the eight times area method had never been accepted as an exclusive criterion and that the applicant was not entitled, as a matter of right, to have his tract drilled in conformity therewith. The court recognized that, because of the peculiar facts of that case, discrimination might result whichever way the Commission resolved the question, and in that situation held that "* * * it was for the Commission to determine which course would best conserve the natural resources of the State." We adopt that reasoning and hold that in this case it was for the Commission to determine what course to follow.

We approve the holding of the Court of Civil Appeals with reference to the refusal of the trial court to sustain a plea to the jurisdiction predicated upon the pendency of a motion for a rehearing. As reflected above, we do not approve the judgment of that court affirming the trial court's judgment which cancelled the permit. In view of this last conclusion the question of whether the trial court erred in refusing to stay the proceedings pending Thomas' active service in the Navy becomes immaterial. This for the reason that he is being granted all the relief by this judgment which could be granted him upon another trial with him present.

The judgments of both courts below are reversed and judgment is here rendered that respondents take nothing.

Opinion delivered May 15, 1946.

Rehearing overruled November 27, 1946.

MR. CHIEF JUSTICE ALEXANDER dissenting.

I cannot agree to the holding of the majority opinion in the above case.

This is a Rule 37 case in which the applicant secured from the Railroad Commission a permit to drill a second well on a 3.33-acre tract of land. The Stanolind Oil & Gas Company and others contested the granting of the permit. The trial court heard the evidence and cancelled the permit on the ground that the permitee was already receiving his fair share of the oil and that to allow him a second well on the tract in question would enable him to appropriate the oil belonging to contestants.

The Court of Civil Appeals affirmed the judgment of the trial court. 188 S. W. (2d) 418.

The judgment of the trial court was undoubtedly in accordance with the overwhelming weight of the evidence. One witness testified to facts which would have supported the granting of the permit, but apparently the trial court did not accept his version of the facts.

However, the majority opinion holds that the courts have no authority to set aside the findings of the Railroad Commission in a case like this. My views to the contrary are set out more fully in my dissenting opinion in M. E. Trapp et al v. Shell Oil Company, Inc., et al, 145 Texas 323, 198, S. W. (2d) 424, this day decided.

Opinion delivered May 15, 1946.