Dr. Coleman **JACOBSON** et al., Appellants,

v.

**PRESTON FOREST SHOPPING CENTER,**
**INC.,** et al., Appellees.

No. 16082.

Court of Civil Appeals of Texas.

Dallas.

May 25, 1962.

Rehearing Denied June 29, 1962.

Wynne, McKenzie, Stroud, Jaffe & Tinsley; Morris I. Jaffe and Carl W. Wilson, Dallas, for appellants.

H. P. Kucera, City Atty., N. Alex Bickley, Asst. City Atty., Saner, Jack, Sallinger & Nichols, H. Louis Nichols, Dallas, for appellees.

WILLIAMS, Justice.

This action was instituted, pursuant to terms of Art. 1011g, Vernon's Ann.Civ.St. in the nature of a writ of certiorari, by Dr. Coleman Jacobson, and approximately thirteen other resident owners of property in an area in Dallas County, Texas, generally described as PRESTON HAVEN ESTATES, complaining of Preston Forest Shopping Center, Inc., Board of Adjust-

ment of the City of Dallas, Texas, George F. Mixon, Ray Cummings, Building Inspector of the City of Dallas, Texas, and the City of Dallas, a municipal corporation, seeking to set aside and to hold illegal the decision of the Board of Adjustment of the City of Dallas on April 25th, 1961 granting a variance in a building being constructed by Preston Forest Shopping Center, Inc., on property adjacent to that owned by plaintiffs. Defendants answered, contending the action of the Board of Adjustment was supported by substantial evidence and was, in every respect, legal. At the conclusion of the hearing in the District Court, which included all of the evidence adduced before the Board of Adjustment, as well as additional evidence in that Court, the District Judge, trying the case without a jury, affirmed the action of the Board of Adjustment granting the variance. The trial court filed findings of fact and conclusions of law; overruled exceptions filed thereto by the defendants, and also overruled defendants' request for additional findings. From such judgment the complaining property owners have duly prosecuted this appeal.

By their first five points, briefed together, appellants contend, in essence, that there was no substantial evidence before the Board of Adjustment or the trial court to support the application for the variance.

Appellants' points require that the antecedent facts relating to the background of this controversy be detailed. In doing so, for brevity we will refer to the Board of Adjustment of the City of Dallas as "Board", Preston Forest Shopping Center, Inc. as "Shopping Center". George F. Mixon as "Mixon", City of Dallas as "City", and Ray Cummings, Building Inspector, as "Inspector".

Shopping Center (whose president and principal stockholder is Mixon) developed the property on the Southeast corner of Preston Road and Forest Lane, in Dallas, Texas as a shopping center. Appellants are the owners of residences in an Addi-

tion also developed by Mixon, and immediately adjoining Shopping Center.

Mixon was originally granted a special permit under Ordinance #5238 enacted by the City, on August 28th, 1951, said Ordinance being later amended by Ordinance #6493, passed by the City on March 7, 1955, which was a special permit for local Retail-3 uses. This Ordinance specifically provides that the development of the property shall be generally in conformity with the site plan as approved by the City Plan Commission. The original site plan, attached to the Ordinance, was changed on March 20, 1958, such change showing the store buildings in the location where the building under attack is presently built but not demonstrating any specific height of the building, but merely showing square footage of the building. The site plan then was again changed on May 23rd, 1960, such site plan being the one used in the building of the structure now under attack. This site plan has upon its face a statement "approved May 23rd, 1960 Department of City Planning by H. Alden Deyo." To it is also attached a memorandum to the Building Inspector from H. Alden Deyo, director of planning, stating that the copy of the site plan attached was approved by the City Plan Commission and is to be made a part of special permit Ordinances Nos. 8428 and 6493.

Subsequent to the passage of Ordinance #6493, Shopping Center made application dated, August 5th, 1960, for a building permit with the Inspector for the purpose of erecting a retail store, two stories in height. Submitted with this application were copies of the building plans which were to be used, being substantially the same building plans which two previous buildings in the City of Dallas had been erected for the same department store. The application for building permit was granted by the Inspector and Shopping Center commenced construction of such building. During the process of construction certain of the appellants noticed that the wall of the building was being constructed to a height greater than that of other buildings in the shopping center and began an investigation. Thereafter apellants sent written notice to Mixon and Shopping Center advising him that the building was being erected in violation of the Zoning Regulations and that appellants protested such violation. Thereafter the Inspector notified Shopping Center on March 8, 1961 that the building, as shown on the plans, exceeded the height allowed by the Zoning Ordinances of the City of Dallas, and that any further building would be at the risk of the owner. On March 13, 1961 Shopping Center filed appeal #7760 to the Board, requesting approval of the building permit previously issued by the inspector, and requesting approval of a variance in the height of the roof of the building. The actual terms of the application by Shopping Center are set forth in the footnote # 1 below. On the reverse

1. "This application is made at the direction of the City Attorney and the City Council of the City of Dallas, Texas, and is made without prejudice to any rights we may have under the law, as it exists at the present time.

The site plan now being used was presented to and approved by the City Plan Commission. The plans and specifications of the building to be known as the Fair of Texas, were submitted to the Building Inspection Department. The plans, as submitted, clearly indicated the height to which the building was to be built. There was no concealment or misrepresentation on the part of the applicant in order to obtain a Building Permit under any but legal and ordinary means. On this basis, and while in possession of all facts, the Building Inspection Department issued a Building Permit for the construction of the building, according to the plans submitted for approval. Construction was begun, and each stage was inspected and approved by an Inspector from the Building Inspection Department. The complete steel structure, including steel roof girders, was all in place and erected, and the complete brick-work and parapet on all the walls had been completed before the applicant was notified that it had exceeded the allowable height and would need approval of a variance. The roof has been poured, and the parapet walls have been installed; only the glass and building trim have not

side of the application is the Inspector's report containing a certificate showing that the variance required was 2 feet 9 inches on the height of the building. This certificate is referred to in footnote #2 below. Following two extensive hearings at both of which testimony of various witnesses were heard, the Board entered its order granting the variance requested relating to the height of the roof, but requiring Shopping Center to construct such screening between the wall of the building and the residences of appellants. Upon appeal to the District Court all of the testimony introduced before the Board on the two hearings was introduced and, in addition thereto, further testimony was introduced. The Trial Judge affirmed the order of the Board.

 In our consideration of appellants' points of error having to do with the state of evidence, as well as other points dealing with the legality of the order of the Board, we are governed by the following established legal principles:

I. Boards of Adjustment, when acting within their jurisdiction pursuant to statutes (1011a–1011g V.A.C.S.) act as quasi-judicial bodies. Washington v. City of Dallas, Tex.Civ.App., 159 S.W.2d 579.

II. The only question which may be properly raised in a review of a decision of the Board of Adjustment by writ of certiorari is that of the legality of the Board's order. City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67.

III. A legal presumption exists in favor of the Board of Adjustment order and the burden of proof to establish its illegality rests upon those who attempt to overcome its presumption of validity. Board of Adjustment v. Stovall, Tex.Civ.App., 218 S.W.2d 286; Driskell v. Board of Adjustment, Tex.Civ.App., 195 S.W.2d 594; Montgomery v. City of Dallas, Tex.Civ.App., 245 S.W.2d 753; McQuillin "Municipal Corporations" 3rd Ed. Vol. 8, §§ 25.327–25.328.

IV. The court, considering the legality of the order of the Board of Adjustment, must not put itself in the position of the Board and substitute its findings for that of the Board, even though the Court concludes that the overwhelming preponderance of the evidence is against the Board's decision. City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67.

V. The question on appeal from an order of the Board of Adjustment is whether or not there is any substantial evidence affording reasonable support for the findings and order entered by the Board, such being a question of law, and not a fact. If the evidence before the Court, as a whole, is such that reasonable minds could have reached the conclusion that the Board must have reached in order to justify its action,

---

yet been installed. If the highest point of the sloping roof exceeds the allowable of 2½ standard stories, the height of the exterior wall does not exceed the overall allowable height, including the parapet wall."

2. "I hereby certify that Barnett M. Goodstein representing Preston Forest Shopping Center, Inc., did apply for a permit to build a 2 story masonry building 200 ft. x 210 ft. for a retail department store at number 800 Preston Forest Shopping Center Street.
 "The permit was denied on the following grounds. The City Plan Commission approved a site plan for this building and a building permit has been issued to build which is now under construction.

"Since this building will exceed the height maximum of 28′ 9″, the developer has been notified that construction from the date of the letter, March 8, 1961, would be done at his own risk.
 "Proposed maximum height 31′–6″
 "Maximum height permitted 28′–9″

 "Variance needed of 2′–9″
 "Referred to the Board of Adjustment according to Article 165–24, Section 3, Par. 2, of the Zoning Ordinance #5238.
 "/s/ R. H. Cummings
 "FBF
 "R. H. Cummings
 "Chief Building Inspector.
"FBF/md"

then the order must be sustained. Thomas v. Stanolind Oil & Gas Co., 145 Tex. 270, 198 S.W.2d 420, 421; City of Dallas v. Stevens, Tex.Civ.App., 310 S.W.2d 750; Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424; Huguley v. Board of Adjustment of City of Dallas, Tex.Civ.App., 341 S:W.2d 212; Board of Adjustment v. Underwood, Tex.Civ.App., 332 S.W.2d 583.

The power of a Board to grant a variance of a Zoning Ordinance is derived from Art. 1011g, V.A.C.S. and Art. 165–24 of the Zoning Ordinance of the City of Dallas. Art. 1011g, contains the following language:

"The Board of Adjustment shall have the following powers: * * * 3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

Art. 165–24, Zoning Ordinance of the City of Dallas, provides:

"Section 3. Jurisdiction. When in its judgment, the public convenience and welfare will be substantially served and the appropriate use of the neighboring property will not be substantially or permanently injured, the Board of Adjustment may, in specific cases, after public notice and public hearing, and subject to appropriate conditions and safeguard, authorize the following exceptions to the regulations herein established. * * * 2. Permit such modification of the height, yard area and parking regulations as may be necessary to secure appropriate development of a parcel of land of such restricted area and shape that it cannot be appropriately developed without such modification."

Being ever mindful of the foregoing principles of law we have carefully and tediously reviewed the entire record in this case, and based upon the record as a whole, we are of the opinion that the Board's finding and decision are sustained by substantial evidence and that the findings of fact and conclusions of law filed by the Trial Court are correct and should be affirmed.

Appellants vigorously assail the record as being entirely devoid of any evidence relating to the essential elements necessary, and as required by the statute and ordinance, in order to obtain a variance. This has necessitated a careful and tedious study of all of the testimony and in doing so our labor has been materially increased due to the very informal nature of the hearing before the Board. It would serve no useful purpose, and would unduly lengthen this opinion for us to summarize in detail all of the testimony, both oral and before the Court. We deem it sufficient to say that our examination of the testimony has revealed material differences creating issues of fact which have been resolved against appellants.

It is significant and important to bear in mind that the issue before the Board in this case was one as to variance of the height of the building. Typical of the testimony concerning this was that of Mr. Ray Cummings, Chief Building Inspector of the City of Dallas, who testified at the trial of the case that in the area in question the maximum allowable height of a building is 2½ standard stories and that, according to his office's ruling, would be 28 feet 9 inches. He further testified that this height of the building applied to the roof of the building, and the parapet walls were permitted to extend above the roof height for a distance of 4 feet. Thus, he said that the allowable height of the outside parapet walls would be 32 feet 9 inches, and that the plans for the building showed the outside parapet walls to be 32 feet high. Thus, the issue of the height of the outside walls did not

appear to be in dispute, the only question being the height of the roof of the building which was found to be 2 feet 9 inches higher than authorized by the Ordinance. Mr. Cummings advised the Board that the outside parapet walls were not in violation of the Zoning Ordinance of the City and that if the roof or the outside ceiling were lowered 2 feet 9 inches it would not require any change to be made in the outside parapet walls. He further testified that his office examined the plans and specifications tendered and found them to be in accordance with the Ordinance prior to the time a building permit was issued. However, later inspection revealed the height of the roof to be 2 feet 9 inches too high, hence, the resulting application for such variance. There was considerable testimony, pro and con, concerning whether or not the site plan had been approved by the City Plan Commission. There was also considerable testimony, pro and con, as to the correct method of measuring the height of a building. There was considerable testimony to the effect that if the roof of the building was lowered 2 feet 9 inches same could not be observed by appellants-landowners, since the outside walls and parapet were higher than the roof itself. Testimony was adduced from Mr. Gillespie, Staff Designer for Mixon, and by Mr. Nichols, attorney for appellees, concerning the issue of good faith on the part of the builder in proceeding to build the building based upon approved plans and by a building permit issued by the City of Dallas. Mr. Nichols testified at considerable length concerning the hardship which would result to his client if the roof of the building were required to be lowered; that such roof had been constructed by his client acting in good faith and upon a valid building permit issued by the Inspector; that the site plans had been duly approved; that no objection was presented concerning the height of the outside walls of the building; that if the roof line were lowered 2 feet 9 inches and the outside walls not lowered, same being authorized under the Zoning Ordinance

without any variance, it would not change the appearance of the building insofar as the neighbors are concerned. Mr. Nichols testified that, under the circumstances involved in this case, that should the variance be granted, it would not in any way effect any of the neighbors, because, in doing so, the Board would not in any way change the outside height of the walls, which is all that can be seen by the neighbors.

Appellants tendered testimony of numerous property owners who all protested the height of the outside walls of the building, contending same were too high and constituted damage and harm to their property. Considerable testimony was tendered concerning the proper way in which to measure the height of a building, such testimony being extremely conflicting.

Again bearing in mind that under the law it is not for this Court to consider the question of preponderance of the evidence nor to substitute our judgment for that of the trial court or the Board. It is only for this Court to determine whether there was substantial evidence introduced in court to support the action of the administrative body. When we apply these rules to the evidence adduced we are unable to agree with appellants that there is no evidence to support the material elements required by the statute and ordinance in order to obtain a variance in this case. Accordingly, appellants' first five points are overruled.

█ Appellants' sixth point complains of the action of the trial court in sustaining the decision of the Board because the action of the court was improper in that it acted upon an application asking for 2 feet 9 inch variance, when, in fact, the evidence showed that the variance was in excess of 6 feet. This point must be overruled. In the first place the application by appellees for a variance, copied in footnote #1 below reveals that same was not for a specific height or variance. It merely requested the Board to permit appellees to construct the building in accordance with the plans and

specifications previously approved by the Inspector and upon which a building permit had been granted. It was the Inspector himself who advised the Board that the variance needed was 2 feet 9 inches. Moreover, the testimony, as heretofore discussed, is conflicting as to the proper mode and method of measuring the height of the building in question. The testimony being conflicting it is not for us to substitute our judgment for that of the Board or the Trial Court.

█ █ By their seventh point of error, appellants present three different questions: (a) that the Board had no authority under its By-laws to grant a height variance. Appellants refer to the By-laws of the Board which do not contain any mention concerning the height. However, both the provisions of 1011g, V.A.C.S. and the Zoning Ordinance, Art. 165–24, both provide ample authority for the Board in this regard; (b) appellants contend that the permit in question upon which the building was constructed was invalid and of no force and effect as a site plan upon which permit was granted and had never been approved by the City Plan Commission as required by the Ordinance. As stated above there is a conflict in the testimony, both before the Board and the Court, concerning the approval of the site plan in question. The site plan itself bears a notation on two different places thereon that it had been approved by the City Plan Commission. At the hearing of the Board on April 25, 1961 site plans were presented to the Board and identified as the approved site plans and as being the site plans used by the Inspector in issuing the building permit. Testimony was introduced that the Inspector considered the site plans as having been approved. The site plan was also considered by the City Attorney's office of the City of Dallas as being the approved site plan. There is a conflict between the testimony of Mr. Jaffe, attorney for appellants and Mr. Nichols, attorney for appellees, concerning whether the site plan had been approved. Mr. Bickley, Assistant City Attorney, testified that the site plan in question had been ruled officially as being the site plan approved and under which the building was constructed. There being this existing conflicting testimony, it is not for us to resolve the question and the court's findings that there was substantial evidence to support the Board's action must be approved. Moreover, it is our opinion that the question of whether the site plan had been approved by the City Plan Commission is not a controlling factor insofar as this decision is concerned. The Inspector's office, City Plan Office, and the Board had considered the site plan which was used by the Inspector which had been approved by the City Plan office as being the officia¹ approved site plan. Since the Inspector is charged with administering the Zoning Ordinance, if he erred in his decision in this regard, the matter is one that should have been taken to the Board for its consideration or relief sought directly in court as we held in Sparks v. Bolton, Tex.Civ. App., 335 S.W.2d 780. This was not done. The only question presented to the Board was one of variance of the height of the roof; (c) appellants contend that the action of the Board was void because the first hearing before the Board on April 11th was held before only four members of the Board, same being less than the statutory quorum required in such cases. The complete answer to this contention is found in the record wherein it is demonstrated that at the first hearing of the Board on April 11th only four members were present. At that time the Chairman of the Board specifically inquired as to whether or not there would be any objections to proceeding to hear testimony by four members of the Board without making a decision and awaiting the presence of five members of the Board before final decision was made. The record reveals that Mr. Jaffe, attorney for appellants, specifically agreed to such procedure. No decision was made at the April 11th hearing of the Board. Thereafter on April 25th, 1961 five members of the Board were present, heard testimony and acted upon the final decision in this case. It is

our opinion that under the record here made no error is demonstrated. Appellants' seventh point is overruled.

The judgment of the trial court is affirmed.