**Joe TILLEY et al., Appellants,**

v.

**Ben J. ROGERS et al., Appellees.**

**No. 6835.**

Court of Civil Appeals of Texas.

Beaumont.

June 2, 1966.

Rehearing Denied July 7, 1966.

Moore, Moore & Pate, R. G. Papich, Beaumont, for appellants.

Keith, Mehaffy & Weber, Pat T. Peyton, Jr., George E. Murphy, City Atty., Beaumont, for appellees.

PARKER, Justice.

Joe Tilley and others sued Ben J. Rogers and others to set aside and declare invalid an amendatory zoning ordinance adopted by the City Council of the City of Beaumont on June 16, 1964. A comprehensive zoning ordinance was passed by the City Council of the City of Beaumont on June 7, 1955, which classified a strip 200' in width of a 34.5 acre tract as C–1 which permits neighborhood commercial use. Subsequently, 60' of the 200' was taken and used in the improvement of Highway 69, leaving a 140' strip for such commercial use. The remainder of such 34.5 acre tract by the ordinance of June 7, 1955, was classified as R–1 only permitting single family dwelling use. The amendatory ordinance of June 16, 1964, classified the entire 34.5 acre tract as C–1. As changed, the defendants would be permitted to construct and operate a regional retail shopping center on the 34.5 acre tract of land. Trial being to the court, judgment was entered in

favor of the defendants and against the plaintiffs upholding the validity of the amendatory ordinance above referred to. Plaintiffs in the trial court are appellants here. Defendants in the trial court are appellees here.

Appellants attack the validity of the 1964 amendment to the Zoning Ordinance of the City of Beaumont. Such appeal is governed by the substantial evidence rule. The rules controlling this court's consideration of this appeal are clearly announced in City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477, 480–481 (1955). Paraphrasing such decision, the enactment of any zoning ordinance is an exercise of the legislative power of the city's council, presumably valid. This presumption of validity accorded the original comprehensive zoning ordinance of the City of Beaumont applies as well to an amendatory ordinance. Courts have no authority to interfere unless the change is clearly illegal, unreasonable and arbitrary. If the fact issues are fairly debatable, courts will not interfere.

After hearing the evidence, the trial court found that substantial evidence was introduced in the trial court which reasonably supported the action of the City Council with the conclusion of law that the enactment of such amendatory ordinance was not illegal, unreasonable or arbitrary. This was the basis for the judgment of the trial court. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 74, 131 S.W.2d 73, 82 (1939). Having reached such conclusion under the substantial evidence rule, the trial court was not required to file findings of fact and conclusions of law as it would be required to do in an ordinary civil suit where parties requested findings of fact and conclusions under Texas Rules of Civil Procedure, Rules 296, 297 and 298. Appellants' points of error 1 through 3 asserting error on the part of the trial court in not filing findings of fact and conclusions of law as it would be re-

quired to do in the ordinary civil suit are each and all overruled.

The scope of review in this substantial evidence case is as stated in Thomas v. Stanolind Oil & Gas Co., 145 Tex. 270, 198 S.W.2d 420, 421 (1946):

"A proceeding of this nature is not comparable to a proceeding in an ordinary civil suit in which the fact findings of a jury are attacked on the ground of the insufficiency of the evidence to sustain them. In that proceeding trial courts and courts of civil appeals are clothed with the authority, not possessed by this court, to set aside such findings if they are thought to be against the great weight and overwhelming preponderance of the evidence. But those courts are not clothed with authority to set aside fact findings of an administrative agency made within the scope of its statutory powers on that ground. The Legislature has clothed administrative agencies with special powers to perform special functions and in reviewing fact findings of such agencies no question of the preponderance of the evidence is involved. The question is whether or not there is any substantial evidence affording reasonable support for such findings and the orders entered thereunder. That is a question of law of which this court, along with the lower courts, has jurisdiction and in the exercise of that jurisdiction we consider the record before us."

Appellants' points of error 5 through 11, both inclusive, contend:

"It is the contention of Plaintiffs that no evidence was introduced on the trial of this case which was material or sufficient to support the action of the City Council in making the zoning change requested by the Defendants."

A summary of the evidence introduced on the trial which was material and in support of the action of the City Council in making the zoning change requested by

the appellees will be considered, limited to substantial probative evidence existing at the time of the public hearing on June 1st and 2nd, 1964, or on June 16, 1964, when such amendatory ordinance was enacted. This property adjoins Highway 69 on the west. A 200′ strip adjoining the highway on the west was originally classified as commercial or C–1. Thereafter, 60′ off the front of the property was taken for the purpose of widening the highway, thus cutting the commercial area from 200′ to 140′. Qualified real estate developers and appraisers testified:

"The tract is level, but it's heavily wooded in native trees and underbrush. It is bisected by a thirty-foot drainage ditch easement, which runs east and west * * * [and] by two streets known as Arthur Drive and East Drive. I found there were several shelled roads in the place each leading to four producing oil wells or were producing at the time of my inspection. Each of these wells had pipe lines, gathering lines, tanks, sump pits and a culdesac—or a turnaround for the trucks operating within that area."

The witness, Hollin, testified:

"This tract, being small in size, irregular in shape would be very difficult to plan under any conditions, for residential use. And not considering giving any consideration to the drainage problems this has or other physical factors."

Witness Hall testified should the 140′ strip adjoining the highway be used commercially, a traffic hazard would be created for each separate business would have its own separate entrance and exit to the highway. This would result in a menace to the safety of the public travelling on the highway, as well as those going to and from such places of business. Such a strip development would create a health menace because of the existence of the trash problem with trash stacked up behind the buildings. With the development of the land under consideration as a shopping center, more safety would be afforded to traffic, which had increased on Highway 69.

This 34.5 acre tract of land is known as the "Edwards Tract". The proposed community center, to be known as "Northland", showed that the planned use would have the result of limiting the number of entrances to the highway and decreasing traffic hazards. It would improve drainage, rid the area of rodents. The C–1 classification would be the highest and best use of the property, both for the developers and the neighborhood. The plan would prevent overcrowding of the land and would not adversely affect the resale value of homes in that area. The amended ordinance would be of service to the community in conserving, and not depreciating or decreasing the values of this property and the property in the immediate area.

Since the adoption of the original zoning ordinance changes in the area were: (a) 31 square miles of new territory had been added to the City of Beaumont; (b) a tremendous new development and building program just beyond the city limits of Beaumont in south Hardin County had occurred and was continuing, with those residents of Hardin County in going to the City of Beaumont passing by the property involved in this suit; (c) the removal of the railroad across Highway 69 to the east had led to the opening of streets with the greater flow of traffic.

It was the opinion of expert witnesses that the 140′ strip area zoned commercially is inadequate for commercial purposes as the 60′ strip taken by the highway program resulted in "strip zoning". The 140′ remaining was inadequate for commercial purposes and not proper zoning. Further, in the opinion of such witnesses the best use of this particular tract would be for commercial use serving automobile driven customers.

Efforts to develop the property residentially had been unsuccessful because of the

production of oil from such land with tanks, wells, flow lines, and the usual equipment for producing and caring for such production. Lack of adequate drainage and the increased flow of vehicular traffic, together with commercial development in nearby areas, made the area unattractive to home builders. Financing the building of homes under such conditions was virtually impossible. The proposed shopping center would not adversely affect surrounding property for residential purposes but would help the general appearance of the neighborhood, surrounding property, residential and otherwise.

Appellants produced some evidence contradicting some of the above matters. Reasonable minds could differ in considering such conflicting evidence adduced upon the trial, but clearly no abuse of discretion was shown and the amendatory ordinance was a valid exercise of the City police power. Appellants' points of error 5 through 11, both inclusive, are overruled.

■ Appellants' point of error No. 4 is as follows:

"The Trial Court erred in refusing to set aside and declare invalid the Amendatory Ordinance adopted by the Beaumont City Council on June 16, 1964, for the reason that a quorum of the City Council was not present at the alleged joint 'public hearing' of the City Council and the Zoning Commission, held on June 1–2, 1964, and therefore, no valid 'public hearing' was had."

To amend the original zoning ordinance the City Council must hold a public hearing with at least three members present and participating. It is undisputed that at the joint hearing held on June 1–2, 1964, Mayor Moore and Councilman Leach were not present and did not participate, leaving Councilmen Patton, Christopher and Hybarger present. Appellants contend that Hybarger on those dates was holding two civil offices of emolument in violation of Article 16, § 40 of the Constitution of the State of Texas, Vernon's Ann.St. In September of 1958 Hybarger was appointed Associate Professor of Education at Lamar State College of Technology, a state supported college. In May, 1962, Hybarger qualified as City Councilman. The office of City Councilman is a civil office of emolument. Hybarger is an employee of a state supported school and is paid with funds derived from taxation; however, a professorship is not an office. A teacher or college professor is not an officer within the meaning of the constitutional provision of Article 16, § 40 of the Constitution of the State of Texas. He is an employee and the prohibition of the constitutional provision of Article 16, § 40 is inapplicable. The distinction between officer and an employee is discussed in Aldine Independent School District v. Standley, 154 Tex. 547, 280 S.W.2d 578, 583 (1955) and Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900). We see no difference in the meaning of public office and civil office. In 75 A.L.R., p. 1352, the rule is announced as follows:

"The courts are almost unanimous in holding that the position of a teacher is that of employee, rested on the contract of employment, and not that of public officer."

Appellants' point of error No. 4 is overruled.

The judgment of the trial court is affirmed.