Jack R. SWAIN et al., Appellants,

v.

**BOARD OF ADJUSTMENT OF the CITY
OF UNIVERSITY PARK, Texas,
et al., Appellees.**

No. 17125.

Court of Civil Appeals of Texas.

Dallas.

Sept. 27, 1968.

Rehearing Denied Oct. 25, 1968.

Duncan Boeckman, of Golden, Burrow, Potts & Boeckman, Dallas, for appellants.

Dick P. Wood, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

This is an appeal from a summary judgment denying a variance of a zoning ordinance and upholding an order of the Board of Adjustment of the City of University Park directing the discontinuance of use of the property in question as a gasoline filling station.

The material antecedent facts are without dispute. The subject property is located at 5801 Hillcrest in the City of University Park, Texas and being the northwest corner of the intersection of Hillcrest Boulevard and Potomac Avenue. On December 17, 1929 the City of University Park, a

general law city of the State of Texas, enacted a comprehensive zoning ordinance pursuant to authority of Articles 1011a–1011j, Vernon's Ann.Civ.St. of Texas, and by the terms of said ordinance the City was divided into separate areas for businesses, apartments and private residences. The real estate in question was in an area restricted to apartments and the ordinance specifically provided that no buildings should be erected in the area to be used for other purposes than those designated. Gasoline filling stations were restricted to retail business districts. The ordinance created, by authority of Art. 1011g, V.A.C.S., a Board of Adjustment having the powers granted by and expressed in the terms of the statute.

In 1933 the property was owned by Edward T. Moore, who filed an application with the Board of Adjustment for a permit to build a filling station on the land. Following a hearing before the Board the application was first denied but later granted. Thereafter Mr. Moore completed the construction of a filling station on the property and operated or permitted the same to be used and operated as a business of selling gasoline, oils, and allied products.

On September 18, 1940 the City Council of the City of University Park enacted another comprehensive zoning ordinance in which the property in question was set aside as a two-family dwelling district. By the specific terms of this ordinance the operation of any "business, trade or professional practice on the premises" was prohibited within the single-family and two-family residence area. As to nonconforming uses and extinguishment thereof, the ordinance provided: .

"All buildings located in the 'A' Single-Family Dwelling District, 'B' Single-Family Dwelling District, 'C' Two-Family Dwelling District or 'D' Apartment District, that are used as a nonconforming use for commercial or industrial purposes at the time of the passage of this Ordinance shall be removed or converted and their premises thereaf-

ter devoted to uses permitted in the district in which they are located prior to the first day of January, 1965."

Thereafter, on October 20, 1952, the City adopted its present ordinance and again specified that the property in question would be in a "C" two-family dwelling district. The ordinance contained the same provision with reference to extinguishment of nonconforming uses, as above quoted, with the exception that the word "business" was included immediately before the word "commercial".

On April 26, 1954 Mr. Jack Swain, one of appellants, purchased the property but admittedly did not personally investigate or cause to be investigated the terms of the zoning laws prior to the time he acquired same. Thereafter Dunlap-Swain Tire Company, Inc., the other appellant, operated the filling station as lessee thereof, selling gasoline, oil, tires and allied products. On January 6, 1965 the City Engineer of the City of University Park addressed a letter to Mr. Swain in which formal notice was given that the property in question was being used in violation of ordinances of the City of University Park and directing that necessary steps be taken to comply with the section of the ordinance providing for the discontinuance of nonconforming use. On January 9, 1965 Jack R. Swain and Dunlap-Swain Tire Co., Inc. filed a petition with the Board of Adjustment of the City of University Park in which they prayed that the order of the City Engineer be overruled and, in the alternative, that the Board grant to the applicants a variance from the terms of the comprehensive zoning ordinance so as to allow the property to be continued in use as a business. The Board heard the proponents and opponents of the application and rendered its decision that a literal enforcement of the zoning ordinance with reference to discontinuance of the nonconforming use would not result in unnecessary hardship to applicants and that the granting of the application for variance would be contrary to the spirit of the zoning ordinance. According-

ly, the Board denied the request for a variance and ordered that the gasoline service station be removed from the premises in question.

Following this decision of the Board appellants filed their petition for certiorari in the district court of Dallas County. The Board and the City of University Park complied by filing the entire record of the matter with the court. Thereafter the City and its Board filed a motion for summary judgment, supported by the statement of facts of the proceedings held before the Board of Adjustment, together with other documentary summary judgment evidence. Appellants also filed their motion for summary judgment. The trial court granted the motion of appellees and rendered judgment upholding the action of the Board of Adjustment and denying appellants any relief. From this judgment appellants have perfected this appeal. We affirm.

## OPINION

 Consideration and resolution of appellants' points of error assailing the legality of the order of the Board of Adjustment is governed by firmly established rules which were enumerated by us in Jacobson v. Preston Forest Shopping Center, Inc., 359 S.W.2d 156 (Tex.Civ.App., Dallas 1962, writ ref'd n. r. e.). Briefly, these governing legal principles may be summarized: (1) The only question which may be properly raised in a review of the decision of the Board of Adjustment by writ of certiorari is that of the legality of the board's order; (2) a legal presumption exists in favor of the board's order and the burden of proof to establish its illegality rests upon those who attempt to overcome its presumption of validity; (3) the principal issue on appeal from such order of the board is whether or not there is any substantial evidence affording reasonable support for the findings and order entered, such being a question of law, and not one of fact. If the evidence before the court, as a whole, is such that reasonable minds could have reached the conclusion that the

board must have reached in order to justify its action, then the order must be sustained. City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67 (1945); Thomas v. Stanolind Oil & Gas Co., 145 Tex. 270, 198 S.W.2d 420 (1946).

Both before the Board of Adjustment and this court appellants vigorously contend that since the Board granted to their predecessor in title an exception authorizing the erection and use of the property as a filling station in 1933, such property did not fall within the category of a nonconforming use at the time of the passage of the comprehensive zoning ordinance in 1940, and again in 1952, which is now sought to be enforced by the City. Appellants argue that the ordinance now sought to be enforced, even if valid, only applies to nonconforming uses and since the City itself, acting through its agency, had previously granted an exception to the use of the property such action removed the subject property from the classification of nonconforming use. The position taken by appellants postulates the legality of the action of the Board in granting the original permit in 1933.

The term "nonconforming use" as used in the law of zoning has been defined as the use of land or buildings that existed legally when the zoning restriction became effective and that has continued to exist since that time. 63 Tex.Jur.2d, Zoning, § 110, p. 875; Town of Highland Park v. Marshall, 235 S.W.2d 658 (Tex.Civ.App., Dallas 1950, writ ref'd n. r. e.).

Variances and exceptions are distinguishable from nonconforming uses. The owner of a lawful nonconforming use existing at the time of the enactment of the zoning ordinance is said to have the right to continue that use, subject to exceptions hereinafter noted.

"On the other hand, a use or structure that may be authorized as a special exception to the zoning ordinance is one not in existence at the time the ordinance was passed and that is prohibited

by the ordinance without first procuring a permit authorizing it after a showing of facts necessary to warrant its issuance *within the specific exception provision of the applicable regulation.* Similarly, a variance of a zoning regulation is authorized to permit a use not in existence at the time the zoning ordinance was passed and that is prohibited by the ordinance after a showing that owing to special conditions, a literal enforcement of the zoning ordinance would result in unnecessary hardship." (Emphasis supplied.) 63 Tex.Jur.2d, Zoning, § 127, p. 900.

■ The City of University Park is confined in its exercise of power to pass a comprehensive zoning ordinance to the express authority granted it by the Legislature. This authority is found in Articles 1011a et seq., V.A.C.S. Art. 1011c, V.A.C.S., states the purposes of such regulations as being, *inter alia,* to promote health and the general welfare of the community. It is expressly provided that:

"Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality * * * ."

To aid the cities in carrying out the purposes of the zoning policies the Legislature, in Art. 1011g, V.A.C.S., provided for the creation of a Board of Adjustment which may, in appropriate cases "and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance *in harmony with its general purpose and intent and in accordance with general or specific rules therein contained."* (Emphasis supplied.) Among other powers granted to the Board of Adjustment are:

"2. To hear and decide special exceptions to the terms of the ordinance upon which such Board is required to pass under such ordinance.

"3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special exceptions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

Our Supreme Court in Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704 (1950), observed that the power to vary conditions of zoning ordinances should be sparingly exercised, and such power should be exercised only for the benefit of the public and with due regard for the preservation of the rights of others acquired under original zoning ordinances.

■ As noted above the power to vary the application of zoning regulations, or to permit special exceptions thereto, is expressly limited to such variations or exceptions as are consistent or are in harmony with, or not in derogation of, the spirit, intent, purpose or general plan of the regulation. By empowering a Board of Adjustment to make variances or exceptions from the zoning regulations it is not intended that the board take over the legislative functions of the governing body of the city. The board in such cases acts as a quasi-judicial body. Having no statutory power to legislate, any provision of a municipal ordinance that undertakes to confer legislative functions on such board would be invalid as constituting an unlawful delegation of legislative powers. 63 Tex.Jur. 2d, Zoning, §§ 132 and 133, p. 905; Board of Adjustment v. Stovall, 218 S.W.2d 286 (Tex.Civ.App., Fort Worth 1949, no writ); Board of Adjustment of City of Fort Worth v. Rich, 328 S.W.2d 798 (Tex.Civ. App., Fort Worth 1959, writ ref'd).

Bearing in mind these fundamental principles of law we have concluded that the act on the part of the Board in granting appellants' predecessor in title the right to

construct a filling station upon and use the property in question as a business in 1933 was void. At that time the ordinance was emphatic in prohibiting the use of the area in question as a business. The act on the part of the Board in allowing the intrusion of a business within the residential area amounted to a legislative decision changing the basic purpose and intent of the zoning ordinance. This it had no right or power to do.

In City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W.2d 229 (opinion adopted, 1937), the court held that a building inspector of the City of Amarillo and the Board of Adjustment had no authority to permit the building of a foundry in a particular manufacturing district which excluded such business. The court held that not only was the granting of the permit unauthorized and void but the permittee acquired no rights thereunder and no estoppel would be created against the city.

In Harrington v. Board of Adjustment, 124 S.W.2d 401 (Tex.Civ.App., Amarillo 1939, writ ref'd), the identical question was presented and decided adversely to appellants' contention here. There the Board granted the application of the owner of certain property to erect a gasoline filling station in a residential district of the City of Alamo Heights. In passing upon the question of the power and authority of the Board to grant the special exception the court reviewed the statute above quoted and pointed out that the authority of the Board could not be justified under either Subdivision 2 or 3 of Art. 1011g, V.A.C.S., relating to "special exceptions" or to "variances". The court said that to allow the Board power and authority to make exceptions so as to allow the property to be used as a business absolutely forbidden by the ordinance itself would be directly contrary to the spirit and purpose of the zoning law. Moreover, said the court, such action on the part of the Board amounted to an unlawful usurpation of legislative authority. The court concluded that the act on the part of the Board in granting the permit

was void, and the Supreme Court, in refusing a writ of error, approved this decision.

Many cases have been decided by our courts upholding the principle of law above announced. Connor v. City of University Park, 142 S.W.2d 706 (Tex.Civ.App., Dallas 1940, writ ref'd) (denying operation of a dentist office in a residential area); Board of Adjustment of City of San Antonio v. Levinson, 244 S.W.2d 281 (Tex.Civ. App., San Antonio 1951, no writ) (beauty parlor in a residential area); Texas Consolidated Theatres v. Pittillo, 204 S.W.2d 396 (Tex.Civ.App., Waco 1947, no writ) (parking lot within a residential area); Davis v. City of Abilene, 250 S.W.2d 685 (Tex.Civ.App., Eastland 1952, writ ref'd) (garment factory within a residential area); Board of Adjustment of the City of Fort Worth v. Rich, 328 S.W.2d 798 (Tex.Civ.App., Fort Worth 1959, writ ref'd); Gartner v. Board of Adjustment of City of San Antonio, 324 S.W.2d 454 (Tex.Civ.App., San Antonio 1959, writ ref'd n. r. e.); and Vol. 1, Baylor Law Review, p. 228, et seq.

While it may be true, as said by the court in Edge v. City of Bellaire, 200 S. W.2d 224 (Tex.Civ.App., Galveston 1947, writ ref'd), that it is unfortunate that the officials of the city issued a permit to appellants' predecessor in title to erect a business establishment within the zoning area yet such conduct of these officials, however unjust and harsh its effect might have been on appellants cannot be used to prejudice or destroy the rights of the citizens of the City of University Park to require the enforcement of the zoning ordinance, which was valid on its face. The act on the part of the Board in granting the permit, being unauthorized in law, cannot create an estoppel against the citizens of the City of University Park and no rights acquired thereby. City of San Antonio v. Humble Oil & Refining Co., 27 S. W.2d 868 (Tex.Civ.App., San Antonio 1930); Rolison v. Puckett et al., 145 Tex. 366, 198 S.W.2d 74 (1946).

Since the record in this case falls clearly within the ambit of the authorities above cited we hold (1) that the action of the Board of Adjustment of the City of University Park in 1933 granting permit to appellants' predecessor in title to erect a filling station upon the property in question and to use the same as a business was void *ab initio*; (2) that no vested rights were acquired by the use of the property contrary to the purpose of the ordinance; and (3) that the people of the City of University Park, acting through their governing authority, are not estopped to assert their rights under the zoning ordinance by virtue of the continued use pursuant to a void permit.

Assuming nonconforming use status of the property, appellants mount a constitutional attack upon the ordinance in question, and especially that provision of same requiring the cessation of nonconforming use at the end of twenty-five years, as constituting an unreasonable exercise of police power in that it amounts to a taking of appellants' property in violation of Art. 1, Sec. 17, of the Constitution of Texas, Vernon's Ann.St. and the Fourteenth Amendment of the Constitution of the United States.

In support of their position appellants rely almost entirely upon the decision of our Supreme Court in City of Corpus Christi v. Allen, 152 Tex. 137, 254 S.W.2d 759 (1953). In that case the City of Corpus Christi, in 1937, adopted a comprehensive zoning ordinance which contained a provision for cessation of certain "nonconforming uses", including automobile wrecking yards, on January 1, 1950. Respondents in that case operated open air storage yard and automobile wrecking businesses in an area designated as a "light industrial district" whereas the ordinance prescribes such businesses to be operated only in a "heavy industrial district." The Supreme Court upheld a constitutional attack upon the ordinance in question as it applied to the facts in that case. The court said that the nonconforming uses sought to be enjoined "are not shown to constitute nuisances, and do not appear to be harmful in any way to public health, safety, morals or welfare * * *." The court further pointed out that the power attempted "would be unreasonable because any benefit to petitioner by its exercise would undoubtedly be relatively very small; respondents would be forced to move from a 'light' industrial district, where adjoining uses, admittedly legal, such as second-hand furniture stores, garages and the like, are not substantially out of harmony with, or different from the uses petitioner would force respondents to quit * * *."

The court concluded its opinion with these significant words:

"Our conclusion is not to be construed as a holding that the ordinance in question may not, under other circumstances, be invoked to terminate a non-conforming use, not a nuisance nor injurious to the public health, morals, safety or welfare."

A proper resolution of the question of constitutionality *vel non* of a particular statute or ordinance depends, in large measure, upon the particular facts presented. In deciding the question of constitutionality of the instant ordinance we must look to the particular facts developed in this case with due consideration to the respective interests of the public and the individual property owners. When we do this we observe many distinguishing factors which set this case apart from *Allen* to the extent that we consider that decision is not controlling of the situation now before us. For example, in *Allen* there was a real and genuine nonconforming use status of the subject property whereas here, as demonstrated above, the use was not legal and therefore not nonconforming in the true sense. Moreover, here the use of the property as a business had its inception following the passage of the original zoning ordinance. In *Allen* there was no intrusion of a business into a residential area, as here. The matter of

violating the spirit and letter of the zoning law by the continued imposition of a business within a residential area, to the loss and detriment of individual property owners of such residences, was not presented in *Allen*. Moreover, in *Allen* the Supreme Court specifically found no substantial loss to residential property owners and also found that the nonconforming use does not appear to be harmful to the public health, safety, morals or welfare. In this case there is an implied finding, supported by ample evidence, to the contrary. Here the presumption of legality of the Board's order has not been overcome by competent summary judgment evidence introduced by appellants. Accordingly, while recognizing the authority of *Allen* we hold that same is not determinative of the factual situation here presented.

We are of the opinion that if it could be said that the property in question was properly in the category of nonconforming use, as contended by appellants, then the case is governed by the modern trend of authorities which uphold the right of a municipality, within the proper exercise of its zoning regulations, and within the exercise of its police power, to reasonably require the discontinuance of a prior nonconforming use.

 For a time the courts considered the rights of nonconforming uses to be subject to only a few exceptions and variations and no limitation as to time. However, in recent years the trend of authorities has been to grant to municipalities the right and power to provide in their comprehensive zoning ordinances provisions for the discontinuance of nonconforming uses provided such were reasonable and a proper exercise of police power. Thus if the ordinance extended to the nonconforming user a reasonable time within which the full value of the investment could be amortized then such would be considered valid. Such decisions turn upon the question of the respective rights of the property owners as contrasted with the public welfare and character of the area surrounding the property in question. This is in accord with the general rule of law that all property is held subject to the police power of the government and the mere fact that a regulation operates as a restraint upon private rights does not make it invalid provided a reasonable time is granted. Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475 (1934). Whether the ordinance is reasonable or unreasonable, or whether the power conferred upon the Board of Adjustment is exercised arbitrarily or not is for the courts to determine as a matter of law. City of University Park v. Hoblitzelle, 150 S.W.2d 169 (Tex. Civ.App., Dallas 1941, writ dism'd).

As stated above, our Supreme Court in *Allen*, supra, clearly indicated the validity of such an ordinance under proper circumstances. Although not controlling in that case, the principle of discontinuance of nonconforming use was discussed by this court in City of Dallas v. Halbert, 246 S. W.2d 686 (Tex.Civ.App., Dallas 1952). More recently, in 1962 we upheld such an ordinance of the City of Dallas in City of Dallas v. Fifley, 359 S.W.2d 177 (Tex. Civ.App., Dallas 1962, writ ref'd n. r. e.).

While the authorities in other states are not uniform on the question, we believe that the weight of authority and the better rule of law is announced in the following cases which uphold the constitutionality of municipal ordinances which reasonably require the discontinuance of nonconforming uses. Standard Oil Co. v. City of Tallahassee, 183 F.2d 410 (5th Cir. 1950), cert. denied 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647; City of Los Angeles v. Gage, 127 Cal.App.2d 442, 274 P.2d 34 (1954); Spurgeon v. Board of Commissioners of Shawnee County, 181 Kan. 1008, 317 P.2d 798 (1957); City of Seattle v. Martin, 54 Wash.2d 541, 342 P.2d 602 (1959); State ex rel. Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613, cert. denied 280 U.S. 556, 50 S.Ct. 16, 74 L.Ed. 612 (1929); State ex rel. Dema Realty Co. v. Jacoby, 168 La. 752, 123 So. 314 (1929); Harbison

v. Buffalo, 4 N.Y.2d 553, 176 N.Y.S.2d 598, 152 N.E.2d 42 (1958); Lachapelle v. Town of Goffstown, 225 A.2d 624 (1967); Wolf v. City of Omaha, 177 Neb. 545, 129 N.W.2d 501 (1964); Livingston Rock & Gravel Co. v. County of Los Angeles, 43 Cal.2d 121, 272 P.2d 4 (1954). See also McQuillin on Municipal Corporations (3d Ed.), Vol. 8A, Sec. 25.190; and Yokley, "Zoning Laws and Practice (3d Ed.), Vol. 2, p. 282, Sec. 16–14.

While neither party here contends that the use of the property involved is a nuisance it is apparent from this record that the City has reasonably exercised its police power in applying the ordinance in question which, in our opinion, maintains the spirit and letter of the comprehensive zoning laws. No one questions that the period of twenty-five years is a reasonable period of time to allow for amortization and discontinuance of the nonconforming use. The summary judgment evidence demonstrates that at the time the present owner of the property purchased same no effort was made to investigate the ordinance provisions with reference to discontinuance and to be governed thereby. Swain was given constructive notice of this ordinance and he cannot escape the legal effect thereof. The evidence also demonstrates the recoupment of investment over the period of years. There is ample evidence to demonstrate that the adjacent property owners are being subjected to losses in valuation of property by virtue of the continuance of the illegal use of the property.

We think that the constitutional assault on this ordinance is answered succinctly by our Supreme Court in Ellis v. City of West University Place, 141 Tex. 608, 175 S.W.2d 396 (1943) and authorities therein cited. We therefore hold that the ordinance is valid and reasonable. We also hold, as a matter of law, that the action on the part of the City of University Park, and its Board of Adjustment, in enforcing the ordinance in question, is not arbitrary or unreasonable.

Art. 1011c, V.A.C.S., contains the express prohibition against the requirement of removal or destruction of property necessarily used in a "public service business" at the time of the enactment of the ordinance. Appellants advance the argument that their filling station business falls within the category of a "public service business" as contemplated by the statute and therefore they are exempt from the provisions of the ordinance. We cannot agree with appellants. Mr. Swain testified by deposition which was introduced in support of the summary judgment motion that there is no difference between the operation of a filling station and any other retail selling business.

In Connor v. City of University Park, 142 S.W.2d 706 (Tex.Civ.App., Dallas 1940, writ ref'd), we discussed the question of the term "business" as applied to the zoning ordinance and as distinguished from public utility businesses, etc. We believe that it is apparent that the Legislature, by enacting Art. 1011c, V.A.C.S., clearly intended to prohibit the restriction of the nonconforming uses to public utilities, and businesses of like character.

We have carefully examined the remaining points advanced by appellants and find that the same are entirely without merit and must be overruled. Both parties moved for summary judgment and therefore acknowledged the nonexistence of issuable facts. The record reveals that there are no facts which should have been submitted to a jury but only questions of law which must be passed upon by the court. There was more than substantial evidence admitted before the Board of Adjustment, as well as before the district court in the form of summary judgment evidence, to support the court's decree upholding the action of the City in enforcing its ordinance and in denying the request for variance.

The judgment of the trial court is affirmed.

Affirmed.

DIXON, C. J., disqualified and took no part in the consideration or disposition of this case.