UNITED STATES STEEL CORPORA-
TION, et al, Appellants,

v.

FIBERGLASS SPECIALTIES,
INC., Appellee.

Nos. 1536, 1537 and 1538.

Court of Appeals of Texas,
Tyler.

Aug. 12, 1982.
Rehearing Denied Sept. 9, 1982.

Odis Hill, Roberts, Harbour, Smith, Harris, French & Ritter, Longview, for appellants.

Rex Houston, Glenn A. Perry, Wellborn, Houston, Bailey, Perry & Adkison, Henderson, Mike Hatchell, Tom Henson, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Tyler, for appellee.

SUMMERS, Chief Justice.

This is a venue case. It includes an appeal from an order overruling the pleas of privilege of three multiple defendants, from which United States Steel Corporation (US Steel) and its unincorporated division USS Chemicals have appealed in Cause No. 1536 and defendant Freeman Chemical Corporation (Freeman) has appealed in Cause No. 1537; and also includes an appeal of Fiberglass Specialties, Inc. (Fiberglass) from orders sustaining the pleas of privilege of two noncorporate defendants, Austin Thornton (Thornton) and Charlie Snyder (Snyder) in Cause No. 1538. We have concluded that the appeal in Cause Nos. 1537 and 1538 should be consolidated with the appeal in the present case (1536) and it is so ordered.

Fiberglass, a Henderson, Texas, manufacturing facility, brought suit in the District Court of Rusk County against US Steel, USS Chemicals and its sales representative Thornton as well as Freeman, its sales representative Snyder, and H. H. Robertson Company seeking a recovery for damages from an alleged breach of warranty and defects in certain polyester resins sold it by these corporate defendants through their respective sales representatives.

Each defendant filed a plea of privilege which was controverted by Fiberglass.

After a hearing on all pleas of privilege, the trial court ruled as follows:

(1) Overruled the pleas of privilege of defendants US Steel, USS Chemicals and Freeman; from this adverse ruling said defendants have appealed.

(2) Sustained the pleas of privilege of Thornton, Snyder and H. H. Robertson Company. Fiberglass has appealed this ruling as to the pleas of Thornton and Snyder only.

We affirm.

The record reflects that Fiberglass manufactures fiberglass church accessories, including steeples, baptistries and crosses at its plant in Henderson, Rusk County, Texas.

One of the key raw products used by Fiberglass in its manufacturing process is a liquefied form of polyester resin. This resin was stored in two tanks on its premises and used at the rate of approximately 40,000 pounds per month. As done by others in the same business, Fiberglass alternated

suppliers of resin each month so as always to be assured of a back-up supplier. From January until July of 1979, the two suppliers of resin were USS Chemicals and Freeman.

Fiberglass replenished its resin tanks before they were completely empty and, by reason of its policy of alternating suppliers, the chemicals of the two different suppliers would be mixed in the same tank. Fiberglass asserts that the critical consideration in its purchase of resin was whether the resin would be compatible with the resin of its alternate supplier (i.e., could the two brands be mixed without causing an adverse chemical reaction).

Oran Webb, the manager of the Fiberglass plant, testified that, before instituting the process of alternating the products of USS Chemicals and Freeman in January 1979, he asked the representatives of both companies (Thornton for USS Chemicals and Snyder for Freeman) if their respective products were compatible, one with the other, and received assurances from each representative, based upon alleged scientific testing, that they were. Both Webb and Howard Hall, owner and president of Fiberglass, testified that they relied on these representations and would not have purchased either product in the absence of such assurances. Hall testified the jelling and solidifying of the two resins in July of 1979 was not consistent with his understanding of compatibility. The record further reflects that all of these representations were made at the Fiberglass plant in Rusk County, Texas.

In July of 1979, Fiberglass experienced problems with "gelling" of resins in both of its tanks. At that time there were USS Chemical resins (delivered June 12, 1979) mixed with Freeman resins (delivered May 24, 1979) in each tank. Fiberglass had bought resin from the same two companies since January 1979 and did not have any trouble until July of 1979 as set forth above.

In its controverting affidavit, Fiberglass incorporated therein its original petition and alleged that venue as to all defendants was maintainable in Rusk County under subdivisions 9 a, 27 and 29a of art. 1995, Tex.Rev.Civ.Stat., and under all provisions of the "Consumers' Protection Code." Neither in its orders overruling the pleas of privilege of the three corporate defendants nor in the orders sustaining the pleas of the two individual defendants did the trial court state the exception considered in determining venue. Moreover, we are without the benefit of findings of fact or conclusions of law. In such an instance, it is presumed on appeal that all fact issues which the pleadings and evidence will support were resolved in favor of the court's order. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977). Furthermore, the trial court must be sustained on any legal theory supported by the record. *Seaman v. Seaman,* 425 S.W.2d 339, 341 (Tex.1968).

In its appellate brief, Fiberglass contends that venue is proper against appellants US Steel, USS Chemicals and Freeman in Rusk County under Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), Tex.Bus. & Com.Code Ann. § 17.56 and subdivision 27 of art. 1995.

US Steel, USS Chemicals and Freeman have each complained in a similar point of error that the trial court erred in overruling its plea of privilege because plaintiff Fiberglass failed to plead or prove a cause of action against such defendant within any valid exception to the general venue rule of art. 1995, Tex.Rev.Civ.Stat., 1925.

Fiberglass first contends that venue is proper in Rusk County by virtue of section 17.56 of the DTPA. This section was amended in both 1977 and 1979. The 1977 amendment became effective May 23, 1977, and the 1979 amendment on August 27, 1979. The alleged acts or practice upon which the instant suit is based occurred during the period from January to July of 1979. Plaintiff's original petition was filed on October 3, 1979. By virtue of the prospective nature of the 1979 amendments,[1]

1. S.B. 357 contains the 1979 amendments to the act. Section 9 of S.B. 357 provides:

the general rule that venue is controlled by the venue provision in effect at the time the suit is filed does not apply to DTPA suits filed after the effective date of the 1979 amendments but which are based on a cause of action accruing prior to the effective date of such amendments. Therefore, the 1977 amendments of DTPA govern this case. *See* Curry, The 1979 Amendment to the Deceptive Trade Practices-Consumer Protection Act, 32 Baylor L.Rev. 51, 79 (1980); Patton, Case Law under the Texas Deceptive Trade Practices-Consumer Protection Act, 33 Baylor L.Rev. 575, 576 (1981).

Section 17.56 under the 1977 amendments of the DTPA provided:

> An action brought which alleges a claim to relief under Section 17.50 of this subchapter may be commenced in the county in which the person against whom the suit is brought resides, has his principal place of business, or has done business.

▪ Where the basis of venue under the DTPA is predicated on the contention that the defendants had done business in the county, as is the case here, our courts have interpreted section 17.56 under the 1977 amendments to mean that the plaintiff is required only to allege a cause of action under section 17.50 and prove that the defendant "has done business" in the county of suit. *Legal Security Life Ins. Co. v. Trevino,* 594 S.W.2d 481 (Tex.Civ.App.— San Antonio) writ ref'd n.r.e. per curiam, 605 S.W.2d 857 (Tex.1980); *Walsh Co. v. Manning,* 609 S.W.2d 636, 638 (Tex.Civ.App.

—Tyler 1980, no writ); *Dairyland County Mutual Ins. Co. of Texas v. Harrison,* 578 S.W.2d 186 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). To have done business, the contact need only be the one transaction that is the basis of the lawsuit. *Legal Security Life Ins. Co. v. Trevino, supra.* In their briefs defendants US Steel, USS Chemicals and Freeman concede that the act or practice sued upon (or solicitation of the underlying transaction) occurred in the county of suit. Furthermore, in the venue hearing, ample testimony was introduced, without objection, which establishes the fact that these defendants have done business in Rusk County.

The threshold question before us is whether Fiberglass alleged a claim to relief under section 17.50 of the DTPA as required by section 17.56. US Steel, USS Chemicals and Freeman contend that plaintiff's original petition does not allege a claim to relief under the Act; that the petition referred to the "Texas Consumers Code" and not to the DTPA; that the resin purchased by Fiberglass was raw material bought for use in its manufacturing process and not "goods" under the DTPA; and that Fiberglass did not have standing as a "consumer" under the Act.

▪ To establish venue in Rusk County under section 17.56 of the DTPA under the 1977 amendments, plaintiff had to initially allege facts to show that it was a "consumer" of "goods" or "services" within the definitions set out in the Act and that it had a claim to relief under it.[2] *United Plastics*

---

This Act shall be applied prospectively only. Nothing in this Act affects either procedurally or substantively a cause of action that arose either in whole or in part prior to the effective date of this Act.

2. Applicable provisions of the 1977 amendments of the DTPA read:
Section 17.45 Definitions as used in this subchapter:
  (1) 'Goods' means tangible chattels or real property purchased or leased for use.
  (2) 'Services' means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.

(4) 'Consumer' means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services.
Section 17.50 Relief for consumers
  (a) A consumer may maintain an action if he has been adversely affected by any of the following:
  (1) The use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;
  (2) breach of an express or implied warranty;
  (3) any unconscionable action or course of action by any person

*Co. v. Dyes,* 588 S.W.2d 857, 860 (Tex.Civ. App.—Tyler 1979, no writ); *Compu-Center, Inc. v. Compubill,* 580 S.W.2d 88, 89 (Tex. Civ.App.—Houston [1st Dist.] 1979, no writ).

At the outset we must determine whether Fiberglass purchased the resins as goods for "use" within the meaning of section 17.45(1) of the DTPA. In making this determination, we will be guided by several rules of statutory construction. First, since the legislature did not specifically define the word "use," its ordinary meaning will be applied. *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969); Code Construction Act, Tex.Rev.Civ.Stat.Ann. art. 5429b-2 § 2.01. Second, we must consider the principles applicable in construing the DTPA, as set out in *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980):

> The primary emphasis is on the intention of the legislature, keeping in view 'the old law, the evil and the remedy.' Legislative intent should be determined from the language of the entire Act and not isolated portions. The court is not necessarily confined to the literal meaning of the words used, and the legislative intent rather than the strict letter of the Act will control. The Act itself provides in § 17.44 that it 'shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.'

We turn now to some of the authorities defining the word "use." In *Beggs v. Texas Dep't of Mental Health & Mental Ret.,* 496 S.W.2d 252, 254 (Tex.Civ.App.—San Antonio 1973, writ ref'd), the court defined the word "use" as meaning "to put or bring into action or service; to employ for or apply to a given purpose." The court in *James Stewart & Co. v. Mobley,* 282 S.W.2d 290, 294 (Tex.Civ.App.—Dallas 1955, writ ref'd) said: "'Use' is to employ for accomplishment of a purpose; to apply to one's services; to avail oneself of." Webster's Third New International Dictionary (1976) says that the "use" of a thing means a method or manner of using something; the legal enjoyment of property that consists in its employment, occupation, exercise, or practice.

None of the foregoing definitions would exclude from "use" one who purchases goods for manufacture into a product for resale. Goods purchased for such purpose are used for a definite purpose, i.e., manufacture into a product for resale with the purchaser enjoying a financial benefit from the transaction. Therefore, we hold that when Fiberglass purchased the resin from the defendants, Fiberglass purchased goods within the meaning of the DTPA.

Our next question is whether Fiberglass is a "consumer" for DTPA purposes. We hold it is. In *Otto, Inc. v. Cotton Salvage & Sales, Inc.,* 609 S.W.2d 590 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd), the court reversed the trend of earlier cases and held that a corporation which purchased cotton solely for the purposes of resale was a consumer under the DTPA. The Corpus Christi court construed the DTPA as it existed with the 1977 amendments. In its opinion, the court stated:

> After considering section 17.45 as a whole, the amendments that the Legislature has enacted and the legislative history of the DTPA, we feel the clear intention of the legislature has been to expand the DTPA into a commercial setting.

The court in *Otto* distinguished two prior decisions. *Ratcliff v. Trenholm,* 596 S.W.2d 645 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.) and *Trial v. McCoy,* 553 S.W.2d 199 (Tex.Civ.App.—El Paso 1977, no writ), in

Section 17.46 Deceptive Trade Practices Unlawful
  (b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts:

.    .    .    .    .

  (5) representing that goods or services have ... characteristics, ingredients, uses ..., or qualities which they do not have ...;
  (7) representing that goods or services are of a particular standard, quality, or grade, ... if they are of another;

which the courts specifically held that one who purchased for resale was not a "consumer" within the DTPA. The court in *Otto* reasoned that the two prior cases were decided under the 1975 amendments which still defined a "merchant" as "a party to a consumer transaction other than a consumer"; that the deletion of this definition in the 1977 amendments reflected a legislative intent to include merchants as consumers under the DTPA; and that neither *Ratcliff* nor *Trial* involved venue.

Moreover, legislative history indicates that resale transactions were intended to be covered by the Act. The legislature has twice rejected amendments[3] which would have provided that one who purchases for resale could not qualify as a consumer. Rejection of a proposed amendment in part or in whole is indicative of the legislative intent underlying an enactment. Patton, Case Law Under the Texas Deceptive Trade Practices—Consumer Protection Act, supra at 555.

We now determine whether Fiberglass has alleged a claim for relief under section 17.50 of the DTPA. The pleadings allege that US Steel and its division USS Chemicals and Freeman through their respective sales representatives sold to Fiberglass resin to be used by it in the manufacture of fiberglass church accessories. Fiberglass's petition alleged a cause of action for breach of warranty and for representing that the resin was suitable for the business purposes of Fiberglass, was properly manufactured and would capably and satisfactorily perform the jobs intended, when in fact the resin was defective and caused extensive damage to plaintiff. The plaintiff further sought a recovery against all defendants in the amount of $75,064.56 and for treble

damages and a reasonable attorney's fee in accordance with the "Texas Consumer's Code." Fiberglass contends that, although its petition did not set forth the formal title of the DTPA or specify the specific section, its allegations, in light of the "notice" concept of modern pleadings, sufficiently put appellants on notice of the true nature of plaintiff's claim; and that further notice of plaintiff's claim was given in its controverting affidavit.

Although good practice would indicate that plaintiff should have done so, it is not necessary that plaintiff plead specifically in its controverting plea which particular subdivision of the relied upon statute applies. Tex.R.Civ.P. 86; *Mobil Oil Corp. v. Gibbons,* 511 S.W.2d 600, 602 (Tex.Civ.App.—Fort Worth 1974, no writ); *Corporation R. Inc. v. Gary Greene Co.,* 476 S.W.2d 921, 923 (Tex. Civ.App.—Houston [14th Dist.] 1972, no writ); *Maddox v. Schwartz,* 439 S.W.2d 369, 372 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). Where, as in the instant case, the defendants fail by exceptions or objections to the evidence to point up any omission or defect in the controverting affidavit or the petition incorporated therein, each will be liberally construed in the pleader's favor. 1 R. McDonald, Texas Civil Practice § 4.49 (rev. 1981); *Hudgens v. Bain Equipment & Tube Sales, Inc.,* 459 S.W.2d 873, 874 (Tex.Civ.App.—Corpus Christi 1970, no writ); *Levinson v. Slater,* 565 S.W.2d 337, 342 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Lanark Corporation v. Conover,* 321 S.W.2d 930, 932 (Tex.Civ. App.—Waco 1959, writ dism'd).

Fiberglass satisfies the two-prong test to qualify for consumer status under the DTPA laid down by our Supreme Court in *Cameron v. Terrell & Garrett, Inc.,* 618

---

**3.** As initially introduced in the House and Senate, the original version of DTPA defined goods as "tangible chattels bought for use primarily for personal, family, or household purposes." Subsequently, the language concerning "personal, family or household purpose" was deleted. Tex.Sen.J., 63 Reg.Sess. at 961 (1973). The requirement "for use" was retained and as enacted, the Act provided: "Goods means tangible chattels bought for use." 1973 Tex.Gen. Laws, ch. 143, § 1 at 323. In 1975, a proposed

amendment to section 17.45(1) defined "goods" as "tangible chattels and real property purchased or leased for *final* use." The word "final" was deleted from the proposed amendment after the Texas Automobile Dealers Association argued that if "use" was restricted to final use, automobile dealers would be prevented from suing companies or individuals who sell products to dealers which are intended to be sold to the dealer's customers. See *Otto,* note 1, supra at 594.

S.W.2d 535, 539. The test includes two requirements: (1) the seeking or acquiring of goods or services by purchase or lease; and (2) the goods or services purchased or leased must form the basis of the complaint.

A broad and liberal construction of plaintiff's petition will justify a holding that the allegations of facts asserted therein are sufficient to allege that Fiberglass is a "consumer" within the definition of section 17.-45 under the 1977 amendments and that plaintiff has alleged a claim for relief under section 17.50 of the DTPA. We hold that for the purposes of maintaining venue under section 17.56, the alleged cause of action is sufficient under section 17.50(a)(1) and (a)(2).

Since we find that Fiberglass has alleged a claim for relief under section 17.56 of the DTPA and has proved that defendants US Steel, USS Chemicals and Freeman have done business in Rusk County, we find venue is properly sustainable in Rusk County. The points of error of US Steel, USS Chemicals and Freeman are overruled.

We next consider points of error 1 and 2 asserted by Fiberglass in which it separately complained that the trial court erred in sustaining the pleas of privilege of Thornton and Snyder for the reason that such ruling is contrary to Exception 29a of art. 1995, Tex.Rev.Civ.Stat.Ann.

Fiberglass contends that since venue in Rusk County was held proper as to United States Steel, USS Chemicals and Freeman, that venue is thus properly maintainable against Thornton and Snyder under the exception contained in subdivision 29a. Subdivision 29a provides that where there are two or more defendants, and such suit is lawfully maintainable in the county of suit against any of such defendants, then such suit may be maintained against "all necessary parties thereto."

The first part of the exception is met since the suit in Rusk County is maintainable as to the defendants United States Steel, USS Chemicals and Freeman. The question then is whether Thornton and Snyder are necessary parties in that suit. For Thornton and Snyder to be necessary parties under subdivision 29a, their joinder in the Rusk County suit must be necessary in order to afford Fiberglass as plaintiff the complete relief to which it is entitled under the facts of its Rusk County case against the defendants United States Steel, its division USS Chemicals, and Freeman. *Friday v. Grant Plaza Huntsville Associates,* 610 S.W.2d 747, 750 (Tex.1980); *Loop Cold Storage Co. v. South Texas Packers, Inc.,* 491 S.W.2d 106, 108 (Tex.1973); *Clingingsmith v. Bond,* 150 Tex. 419, 241 S.W.2d 616, 617 (Tex.1951).

It was Fiberglass's burden to prove that no effectual decree could be rendered between Fiberglass and the defendants United States Steel, USS Chemicals and Freeman in the Rusk County suit without joining Thornton and Snyder. *Friday v. Grand Plaza Huntsville Associates, supra* at 750; *Loop Cold Storage Co. v. South Texas Packers, Inc., supra* at 108, 109.

In the instant case, Fiberglass sued United States Steel and USS Chemicals and its agent and representative Thornton as well as Freeman and its agent and representative Snyder for misrepresentations which allegedly occurred in the sale of polyester resins. Proof offered in the plea of privilege hearing showed that the defendants Thornton and Snyder were at all times acting as salesmen and agents for their respective companies in their dealings with the plaintiff. Both principals and their agents would be liable to plaintiff for any tortious acts committed by the agents during the agency relationship. *Portland Sav. & Loan Ass'n v. Bivell, etc.,* 619 S.W.2d 241, 247 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Dr. Salsbury's Laboratories v. Bell,* 386 S.W.2d 341, 343 (Tex.Civ.App.—Dallas 1964, writ dism'd w.o.j.).

Moreover, the plaintiff could sue either the principal or the agent alone and get complete relief from them individually. *Leonard v. Abbott,* 366 S.W.2d 925, 928–929 (Tex.1963); *Tarrant v. Walker,* 140 Tex. 249, 166 S.W.2d 900, 901–902 (Tex.1943); see 3 Tex.Jur.3rd Agency § 215 (1980).

We hold that Fiberglass as plaintiff in the Rusk County suit is able to get complete relief from defendants United States Steel, USS Chemicals and Freeman. Therefore, Thornton and Snyder are not necessary parties under subdivision 29a of Article 1995. The trial court properly sustained the pleas of privilege of defendants Thornton and Snyder. Fiberglass's two points of error are overruled.

Having decided that the trial court properly overruled the pleas of privilege of US Steel, USS Chemicals and Freeman and sustained the pleas of privilege of Thornton and Snyder, the venue orders of the trial court are affirmed.

RAMEY, J., not participating.