**WEBWORLD MARKETING GROUP, L.L.C., Appellant,**

v.

**Tommie THOMAS, Appellee.**

No. 01–04–00749–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 2, 2007.

Rehearing Overruled Jan. 11, 2008.

Gus E. Pappas, Dabney & Pappas, Houston, TX, for appellant.

Sandra D. Hachem, Stephen A. Smith, Senior Assistant County Attorneys, Houston, TX, for appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

**OPINION ON REHEARING**

GEORGE C. HANKS, JR. Justice.

We withdraw our opinion and judgment of March 22, 2007 and issue the following in its stead.

Webworld Marketing Group, L.L.C. ("Webworld"), appellant, filed this action against Tommy Thomas ("the Sheriff")[1] alleging that the Sheriff unlawfully denied Webworld's application for a Sexually Oriented Business ("SOB") permit. At trial, a jury was asked to find "from a preponder-

---

**1.** The caption on this appeal as filed spells the Sheriff's name "Tommie Thomas." We use the correct spelling in the body of both the majority opinion and the concurring and dissenting opinion.

ance of evidence"[2] (1) whether the location of Webworld's proposed enterprise was located a minimum of 1500 feet from any dwelling in existence at that location at least 30 days before Webworld's application dated March 19, 2001, (2) whether Webworld knowingly made a misleading statement of material fact by omitting or falsifying information in its application for an SOB permit, (3) whether the Sheriff arbitrarily denied Webworld's application for an SOB permit, and (4) whether the Sheriff acted in good faith in denying the application for an SOB permit. All issues were answered in favor of Webworld. No conclusions of law were requested from nor issued by the trial court.

The Sheriff filed a motion for judgment notwithstanding the verdict ("JNOV") arguing that there was legally insufficient evidence to support the jury's findings on questions 1, 3, and 4. Without stating its reasons, the trial court granted the Sheriff's motion for JNOV and denied all relief Webworld sought against the Sheriff. In its sole point of error on appeal, Webworld contends that the trial court erred in granting the JNOV. We affirm the judgment of the trial court.

## Background

In March of 2000, Steve Fisher, managing director of Woodbridge Investment Company, purchased some property on which he wanted to establish a gentleman's club. Fisher, who had experience with SOBs, was aware of the importance of finding land that was not within 1500 feet of any residential use because of the requirements to get a permit for an SOB. *See* Tex. Loc. Gov't Code Ann. § 243.007 (Vernon 2005); Harris County, Tx., Ordinance 83–1812 (August 6, 1996) ("Ordinance"). Within 1500 feet of the proposed

SOB, there was a two-story parrot shop owned by Joe Melvin and his wife. Fisher drove by the parrot shop almost daily, and it was his impression that no one was living there. In December 2000, Webworld was formed to lease the land from Fisher and run the SOB. In March 2001, Fisher climbed a ladder in the middle of the day to investigate the Melvins' upstairs property and took some pictures through the window. He could see all the way to the back wall and noticed that it was largely unfinished, "bare stud walls, no insulation, no Sheetrock, no electrical or plumbing, no furniture, stored bird cages," and appeared to be commercial storage for the shop downstairs. He acknowledged that it looked like there was some sort of construction underway in the space. Fisher testified that he did an Internet check on Harris County Appraisal District website regarding the property which indicated that it was an F–1 commercial property.

After his investigation, Fisher called Darla Gideon of Webworld and advised her that there was nothing in the parrot shop and that she should apply for the SOB permit. Gideon testified that she drove by the parrot shop "many" times between January 2001 and March 2001 and saw "no vehicles parked out front. No activity. The upstairs had no blinds or drapes on it." There was a sign on the door, which clearly stated that the store would be closed during that time, December through March, for approximately three months, as it was every year while the Melvins were on vacation. Gideon also testified that none of the other store owners in the area told her anything different about the parrot shop. Gideon testified that, before filing the application for the permit, she believed that there was no

**2.** At trial, neither party objected to the court's instruction that the issues be considered by the jury under the "preponderance of evidence" standard.

toilet, running water, or electricity in the upstairs of the parrot shop.

On March 19, 2001, Webworld filed for the SOB permit and certified that there was no residence within 1500 feet of the SOB site. In accordance with the requirements for an SOB permit, Webworld sent letters to all property owners within the 1500–foot radius, advising them of its intention to establish the SOB. The property owners then had the opportunity to write a letter to the Sheriff with any objections to the SOB's permit being issued.

After receipt of this notice, the Melvins wrote a letter to the Sheriff explaining that they had a "residence" above the parrot shop within the 1500–foot radius. In the letter, Mr. Melvin stated that he and his wife moved in as residents at the parrot shop "in early February of [2001]" and "had applied for and received an occupancy permit 4 years or so ago." The Melvins had purchased this land in 1996 and applied for a permit to build first the shop on the ground level and then a garage apartment upstairs where they would eventually live. As part of the permitting process, the Melvins submitted drawings to the City of Houston regarding the planned construction. The Melvins testified that they planned to do the construction slowly as funds became available to avoid going into debt. The Melvins also testified that they stayed upstairs periodically, beginning in 1998, after the framing was completed, while they continued working on the building. They stated that they stayed there, on average, two or three nights a month during this time. The Melvins also applied for a homestead exemption; however, because they already owned another home in Montgomery County and could only have one homestead, the exemption was denied. Due to lack of funding, little progress was made on the building construction in 1999. The Melvins testified

that they still lived at the shop occasionally throughout 1999. They also testified that they occasionally stayed at the shop between the Spring of 2000 and December 24, 2000. In January 2001, Mr. Melvin testified that he paid $22,000 to a contractor to install dry wall and basic plumbing and do electrical work in the upstairs space.

The Sheriff sent an investigator to the parrot shop to speak with the Melvins. The investigator went upstairs to inspect the property and requested that the Melvins provide an affidavit concerning the time that they spent upstairs in the parrot shop, recognizing that, if the parrot shop was a dwelling on or before February 19, 2001, the permit would be denied. In an apparent contradiction to his earlier letter to the Sheriff, Mr. Melvin stated in the affidavit that "there was a few times in February" 2001 when they stayed overnight at the parrot shop and that "[f]or the period of time beginning in March [2001], we live in the residence" above the parrot shop. (Emphasis added.) The affidavit also set forth the frequency of the Melvins' occupancy of the parrot shop during 2000 and in March 2001.

We first began living in this building in Spring of 2000. After we moved into the building in Spring 2000, we moved out approximately December 24, 2000. We did not move in again until March 2001.

. . .

From the period of time beginning in March, we live in the residence above the parrot shop approximately 3 and ½ days a week, beginning Thursday and continuing through Sunday. Occasionally during this period of Thursday through Friday, however, we do stay at our Montgomery County residence.

The affidavit did not state that the Melvins had started residing in the space on Feb-

ruary 19, 2001, 30 days before the date of the Webworld permit application.

On May 15, 2001, Webworld received a letter from Major Juan Jorge, detective bureau commander for the Sheriff, denying its SOB permit on the ground that it violated Section VIII(e)(4) of the Ordinance because (1) the SOB was within 1500 feet of a dwelling, (2) Webworld had knowingly made a misleading statement by providing an incorrect address of the SOB, and (3) Webworld had knowingly made a misleading statement because "the proposed building which was to be a cabaret will not fit in the area of your lot area...." Gideon testified that, after receiving Major Jorge's letter, she made several telephone calls to Reliant Houston Lighting & Power ("HL & P"), and she was told that, for the property in question, HL & P had assigned "5, 6, 7 addresses. Some half addresses to light poles and things like that." Gideon was able to obtain the new address for the planned building on the Woodbridge property. Gideon explained that, when the application was filed, the land was "... raw. Trees, mud, dirt, animals." There was no building in place.

Just over one month later, Webworld's attorney wrote a letter acknowledging that it had discovered that the address for the SOB was wrong on the application, and he advised the Sheriff's office of the correct address. Attached to the letter from Webworld's lawyer were at least two documents. One was a map that Webworld had created of the property in question with the correct addresses in place. "Becky" from HL & P signed the map and stated that she agreed that the addresses were correct. The second was a letter from an engineering firm stating that it had designed the building, and the building would fit on the pad site. Gideon never heard back from the Sheriff.

At trial, the Melvins never testified as to the specific date that they started residing upstairs at the parrot shop in 2001. Major Jorge testified that, contrary to the statements in his letter denying the permit on May 15, 2001, he had no evidence that Webworld knowingly made a misstatement or a misleading statement of material fact by omitting or falsifying information on its SOB permit application. Major Jorge testified that having the incorrect address on the application would not be a basis for denying a permit if (1) the location was known to the Sheriff, (2) his department knew which structures existed within 1500 feet of the proposed building site, and (3) the address was corrected in time. Major Jorge testified that, before denying the permit, the Sheriff knew of the location of the proposed SOB site, and he admitted that the Sheriff had to know of the physical location in order to determine whether the parrot shop was within 1500 feet of the proposed building. The court also heard testimony that the Ordinance does not require that the proposed building fit within the pad site.

The Sheriff's investigator who inspected the upstairs space was no longer employed with the office at the time of trial, and no one at the Sheriff's office could testify as to what the space looked like 30 days prior to Webworld's application. However, four witnesses and an appraiser for the Harris County Appraisal District ("HCAD") testified to having been upstairs in the shop prior to March 2001. Roberta Jaeger, a parrot shop customer, testified that, in 2000, the upstairs looked "like it was being lived in" with a bed that had bedding on it, an electrical hookup, and a basic toilet, and there was sheet rock on the walls when she recalled visiting the premises in the Spring of 2001. Charles Cashdollar, a business associate of the Melvins, testified that, when he saw the space in 1999, it

looked "three-quarters" of the way finished, with a bed and plumbing, and it looked like it had been lived in. He also testified that, in 1999 and 2000, he recalled seeing some furniture in the space. Carl Kluge, an appraiser with HCAD, testified that, in 1998, the upstairs looked like "a garage apartment type of situation." It looked like the electrical and plumbing were being "roughed in," and there were no fixtures in at that time. He testified that, even if HCAD designated the building as commercial, a dwelling may exist on the property. Joseph Gueno, a parrot shop customer, testified that, at some time during his visits to the property in mid–1999 through 2000, he saw some walls, air conditioners, and cabinets that had been installed and a bed, a dresser, and some clothes. Larry Wilson, an employee of the Melvins who also helped them work on the upstairs space, testified that the space started to look like a "dwelling" in the Fall or Winter of 2000 and, by this time, the Melvins had been spending the night and placed some furniture in the space.

### Substantial Evidence Rule

 Although the parties did not address the issue of jurisdiction in several rounds of briefing, it is well established that in cases such as this involving a suit for judicial review to a district court from an order of an administrative agency, the district court, in reaching its decision, is bound by the substantial evidence rule. *City of Dallas v. Furrh*, 541 S.W.2d 271, 273 (Tex.Civ.App.-Texarkana 1976, writ ref'd n.r.e.); *City of Dallas v. Stevens*, 310 S.W.2d 750, 755 (Tex.Civ.App.-Dallas 1958, writ ref'd n.r.e.).[3] Neither the trial court

nor the court of appeals has been granted the authority by the State of Texas to review the agency's factual determinations under any other standard. As the Texas Supreme Court explained in *Thomas v. Stanolind Oil & Gas Co.*, the review of agency decisions is not handled like other typical civil matters:

> *A proceeding of this nature is not comparable to a proceeding in an ordinary civil suit in which the fact findings of the jury are attacked on the ground of the insufficiency of the evidence to sustain them.* In that proceeding, trial courts and courts of civil appeals are clothed with the authority, not possessed by this court, to set aside such findings if they are thought to be against the great weight and overwhelming preponderance of the evidence. But those courts are not clothed with authority to set aside fact findings of an administrative agency made within the scope of its statutory powers on that ground. The Legislature has clothed administrative agencies with special powers to perform special functions and in reviewing fact findings of such agencies *no question of the preponderance of the evidence is involved.* The question is whether or not there is any substantial evidence affording reasonable support for such findings and the orders entered thereunder. *That is a question of law of which this court, along with the lower courts, has jurisdiction* and in the exercise of that jurisdiction we consider the record before us.

145 Tex. 270, 198 S.W.2d 420, 421 (1946) (emphasis added).

---

3. Subject-matter jurisdiction concerns a court's power over cases. It stems from the doctrine of separation of powers, and aims to keep the judiciary from encroaching on subjects properly belonging to another branch of government. Subject-matter jurisdiction can-not be waived or conferred by agreement, must be considered by a court *sua sponte,* and can be raised for the first time on appeal. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex.1993).

 Under the substantial evidence rule, the party seeking to set aside an agency's order has the burden of proving that it is not supported by substantial evidence. *See Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex.1986). "Substantial evidence is more than a mere scintilla, but less than a preponderance of the evidence." *City of Houston v. Tippy,* 991 S.W.2d 330, 334 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Under this rule, if the evidence before the court, taken as a whole, is such that reasonable minds *could have* reached the same conclusion reached by the agency, then the order must be sustained. *Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424, 440–41 (1946); *White v. City of Dallas,* 517 S.W.2d 344, 348 (Tex.Civ. App.-Dallas 1974, no writ). The court reviewing the agency's decision must not put itself in the position of the agency and substitute its findings for that of the agency *even if it concludes that the overwhelming preponderance of evidence is against the agency's decision. City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 286–87, 190 S.W.2d 67, 70 (Tex.1945). The determination of whether an agency's decision was supported by substantial evidence is a question of law to be reviewed de novo by the district court and the court of appeals. *See Thomas,* 198 S.W.2d at 421.

 "An administrative decision is generally not arbitrary and capricious if it is supported by substantial evidence." *Hinkley v. Tex. State Bd. of Med. Exam'rs,* 140 S.W.3d 737, 743 (Tex.App.-Austin 2004, pet. denied) (citing *Gerst v. Nixon,* 411 S.W.2d 350, 354 (Tex.1966)). "However instances may arise in which the agency's action is supported by substantial evidence, but is arbitrary and capricious nonetheless. One such instance is when a denial of due process has resulted in the prejudice of substantial rights of a litigant." *Id.* (quoting *Health Facilities Comm'n v. Charter Med–Dallas, Inc.,* 665 S.W.2d 446, 454 (Tex.1984)). As Texas courts have held, the agency decision must be remanded if the court concludes that "the agency has not actually taken a hard look at the salient problems and has not genuinely engaged in reasoned decision-making." *Starr County v. Starr Indus. Servs., Inc.,* 584 S.W.2d 352, 356 (Tex.Civ. App.-Austin 1979, writ. ref'd n.r.e.).

### Analysis

 Under the substantial evidence rule, as a matter of law, there was substantial evidence introduced in the trial court which reasonably supported the Sheriff's denial of a permit to Webworld. As noted in Sections I and II of the Ordinance, the State of Texas has granted Harris County the authority to regulate sexually oriented businesses within its jurisdiction and to make factual determinations regarding the regulation of such entities. The Harris County Commissioners Court has delegated this authority to the Sheriff. As also noted in Section II, the State of Texas has provided for a suit for judicial review of the factual determinations made by the Sheriff under the Ordinance. This review is to be made *only* under the substantial evidence rule.

Pursuant to Section VIII(e)(4) of the Ordinance, the Sheriff may deny a permit to operate an SOB that is not located a minimum of 1500 feet from any dwelling in existence at that location at least 30 days prior to the date of the application for the permit.[4] At trial, the Sheriff presented

---

4. Under the Ordinance, a *"dwelling"* is a house, duplex, apartment, townhome, condominium, mobile home or any other building used as a *"residence."* The term *"residence"* means, personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infre-

more than a scintilla of evidence to the trial court to support his conclusion that the Melvins had taken up residence at the parrot shop by February 19, 2001, 30 days prior to the filing of Webworld's permit application, and it was undisputed that the parrot shop was within 1500 feet of the proposed SOB. Reasonable minds could have reached these same factual findings based on the evidence presented regarding the Melvins' stays at the shop, the improvements in the upstairs area as a residence and the Melvins' first letter to the Sheriff. These facts are a valid basis under the Ordinance to deny the permit. A review of the entire record also established that the Sheriff presented evidence that he followed established internal procedures in investigating the Melvins' claims of residing at the parrot shop. While it is troubling that the Sheriff could not explain all of the statements in his letter to Webworld denying the permit application or why he did not respond to subsequent letters from Webworld, the Sheriff's actions did not deny Webworld with its right to due process.[5] Accordingly, the Sheriff's conduct was not arbitrary or capricious.

In *Stevens*, the Dallas Court of Civil Appeals addressed factual and procedural circumstances analogous to those in this case. *Stevens*, 310 S.W.2d at 751–52. In *Stevens*, the plaintiff sued the chief of police for failing to issue a permit for a dance hall pursuant to a city ordinance because the Chief found that the dance hall constituted a public nuisance. The trial court submitted, under a preponderance of evidence standard, the issues of whether the dance hall constituted a public nuisance and whether the chief's conduct was arbitrary and capricious. The jury found in

favor of the plaintiff. Citing the Texas Supreme Court's opinion in *Thomas v. Stanolind Oil & Gas Co.*, the court of civil appeals reviewed the jury verdict and held that both it and the trial court could only review the chief's decision under the substantial evidence rule as a matter of law, not under a preponderance of the evidence standard. *Stevens*, 310 S.W.2d at 755. Disregarding the jury verdict, the court of civil appeals found that there was substantial evidence supporting the chief's decision and held that the trial court should have entered a judgment in favor of the chief. We reach the same conclusion in this case. Having reached this conclusion, we need not address the Sheriff's appellate points.

### Conclusion

Accordingly, we affirm the trial court's judgment in favor of the Sheriff.

Justice KEYES, concurring and dissenting.

EVELYN V. KEYES, Justice, concurring and dissenting on third motion for rehearing and dissent from denial of en banc reconsideration.

This is the panel's fourth opinion in this case and the first in favor of Sheriff Tommy Thomas ("the Sheriff"). Because the majority fails to address the serious legal issues involving the interpretation of the regulations governing a sexually oriented business ("SOB") that are at the heart of this case and that are raised by the Sheriff's cross-points and each of his motions for rehearing, and, instead, it decides the case *sua sponte* on unassigned error, incorrectly justifying its arguments as "jurisdictional," I dissent from the opinion on

---

quently, but not necessarily combined with design to stay permanently.

**5.** Webworld does not allege that the Sheriff violated its rights under either the United States or Texas constitutions in denying its permit.

rehearing. I concur solely in the judgment affirming the judgment notwithstanding the verdict (JNOV) entered by the trial court in favor of the Sheriff. Because of the importance of this case for the regulation of SOB's, I likewise dissent from the Court's denial of the Sheriff's motion for en banc reconsideration.[1] I would affirm the JNOV entered in favor of the Sheriff by the trial court for the reasons urged by the Sheriff in his cross-points on appeal and in each of his motions for rehearing.

## DISSENT FROM DENIAL OF EN BANC RECONSIDERATION

In response to the Sheriff's third motion for rehearing and motion for en banc reconsideration, the majority reverses itself *sua sponte* on grounds *not* raised by appellant Webworld Marketing Group, L.L.C. ("Webworld") in its appeal or by the Sheriff in his cross-points on appeal or in his Third Motion for Rehearing. The majority incorrectly claims that this case should have been decided under the "substantial evidence" standard used to review an administrative's agency's factual findings on appeal and that this is a jurisdictional issue it is permitted to raise *sua sponte*. *See Webworld Marketing Group, L.L.C. v. Tommie Thomas*, 01–04–00749–CV, op. at 24 (Tex.App.-Houston [1st Dist.] Aug. 2, 2007, no pet. h.) (op. on reh'g) (citing *City of Dallas v. Furrh*, 541 S.W.2d 271, 273 (Tex.Civ.App.-Texarkana 1976, writ ref'd n.r.e.), *City of Dallas v. Stevens*, 310 S.W.2d 750, 755 (Tex.Civ.App.-Dallas 1958, writ ref'd n.r.e.), and *Thomas v. Stanolind Oil & Gas Co.*, 198 S.W.2d 420, 421 (Tex. 1946) (stating that "courts are not clothed with authority to set aside *fact findings of an administrative agency* made within the scope of its statutory powers [if] there is any substantial evidence affording reasonable support for such findings and the orders entered thereunder") (emphasis added)); *see also Public Util. Comm'n v. AT & T Communications*, 777 S.W.2d 363, 365 (Tex.1989) ("The reviewing appellate court is not to make independent findings of fact; the right to find facts rests with the administrative agency."). I disagree.

Webworld did *not* ask the trial court to review and set aside the Sheriff's factual findings from the administrative proceedings regarding Webworld's application for a SOB permit ("SOBP"). Webworld filed suit seeking a declaratory judgment interpreting the law in its favor. It asked the trial court to hold that its application "met all required criteria" for an SOBP and to order the Sheriff to issue the permit. The Sheriff responded that he was not required to issue the permit because Webworld did not satisfy the legal criteria for issuance of a permit. The facts were essentially undisputed. What was disputed was whether the legal criteria for issuance of a permit were satisfied under a correct interpretation of the county ordinances regulating SOB's, given the facts of the case.

The trial court "error" the majority addresses—the failure to use a "substantial evidence" standard of review to review the Sheriff's factual findings—was not raised by any party at any point in this case. Rather, Webworld, the appellant, complained on appeal that the trial court erred in entering JNOV in its favor because, it contended, the evidence was legally and factually sufficient to support the verdict. The Sheriff maintained, in his objections to the charge, in his motion for JNOV, and in

---

1. *See* Tex.R.App. P. 41.2 (providing, "En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration"). This Court previously denied en banc reconsideration on May 11, 2007.

his cross-points on appeal, that the trial court's charge improperly required the jury to make legal determinations and that the evidence, when viewed under a legally correct interpretation of the law, did not support the jury's findings that Webworld satisfied the regulatory requirements for an SOBP. Therefore, the Sheriff argued that the trial judge correctly, if belatedly, took the case away from the jury and correctly entered a directed verdict in his own favor.

The majority ignores both Webworld's legal and factual sufficiency claims and the Sheriff's cross-points and, instead, crafts its own standard of legal and factual sufficiency of the evidence for this jury trial from the legal standard of review of administrative agency findings, justifying its addressing this issue on the ground that it is a jurisdictional issue. The trial court clearly had subject matter jurisdiction to entertain Webworld's declaratory judgment suit, and it clearly had jurisdiction to submit the factual questions in the case to the jury. It even had subject matter jurisdiction to submit the legal questions in the case to the jury (although the Sheriff complained that it did so erroneously). Thus, the "error" the majority addresses—both parties' and the trial court's purported failure to use the correct standard to review the Sheriff's administrative fact findings— is merely unassigned error.

The law is clear that the Texas rules of civil and appellate procedure require a party to apprise a trial court of its error before that error can become the basis for reversal of a judgment. *In the Matter of C.O.S.,* 988 S.W.2d 760, 764–65 (Tex.1999); *see* TEX.R.APP. P. 33.1. Unlike criminal cases, there is no "fundamental error" in purely civil, non-quasi-criminal, cases, like this one, that cannot be forfeited by inaction unless the record shows that the court lacked jurisdiction or the public interest as declared in statutes or the Texas Constitution is "directly and adversely affected." *In the Matter of C.O.S.,* 988 S.W.2d at 765; *see also In the Interest of B.L.D. and B.R.D.,* 113 S.W.3d 340 (Tex.2003) (discussing preservation of error and fundamental error in context of termination of parental rights). In all other cases, including this one, it is error for an appellate court to decide an appeal on the basis of unassigned error, or error that has not been preserved in accordance with the rules of civil and appellate procedure because "[a] point of error not preserved is not before the appellate court for review." *Allright v. Pearson,* 735 S.W.2d 240, 241 (Tex.1987) (per curiam); *American Gen. Fire & Cas. Co. v. Weinberg,* 639 S.W.2d 688, 688 (Tex.1982); *see also Western Steel Co. v. Altenburg,* 206 S.W.3d 121, 124 (Tex. 2006) (absent fundamental error, appellate court should refrain from deciding cases on legal errors not assigned by parties).

In this case, the panel had two choices. Either it could reverse the trial court's judgment on the basis of legal and factual sufficiency of the evidence to support the jury verdict—the error alleged by Webworld—distinguishing the Sheriff's cross-points as without merit, or it could affirm the trial court's judgment on the ground that JNOV was justified because the Sheriff's cross-points established that the case had proceeded to a jury trial under an incorrect charge that required the jury to interpret and then apply the law and, under a correct construction of the law, the Sheriff is not required to issue an SOBP to Webworld. *See Trinity Universal Ins. Co. v. Ponsford Bros.,* 423 S.W.2d 571, 575 (Tex.1968); *City of Houston v. Savely,* 708 S.W.2d 879, 883 (Tex.App.-Houston [1st Dist.] 1986, no writ) (question of whether city complied with statutory provisions was question of construction for court that should not have been submitted to jury and should have been disregarded); *Cain*

*v. Tennessee–Louisiana Oil Co.,* 382 S.W.2d 794, 799 (Tex.Civ.App.-Tyler 1964), *aff'd,* 400 S.W.2d 318 (Tex.1966) (issue that involves construction of legal instrument or that calls for determination of question of law should not be submitted to jury for their determination).

The majority's first three opinions decided the case in favor of Webworld on the ground that the evidence was legally and factually sufficient to support the verdict. In each case, however, the opinion reversed the JNOV in favor of the Sheriff without addressing his cross-points, leading to each of his motions for rehearing and his motion for en banc review. The majority's fourth opinion introduces a point of error raised by no one—namely, that the trial court erred by failing to review the Sheriff's administrative findings under a substantial evidence standard—but it still fails to address the issues raised by the Sheriff's cross-points and by his motions for rehearing and en banc reconsideration, which are necessary to final disposition of this appeal. Thus the opinion contravenes Texas Rule of Appellate Procedure 47.1's mandate that the court of appeals hand down a written opinion "that addresses every issue raised and necessary to final disposition of the appeal."[2] Tex.R.App. P. 47.1.

Because I do not agree that the panel has authority to decide this case in favor of the Sheriff on unassigned error, and because the majority opinion does not address the correct interpretation of the City's ordinances regulating SOB's-the central issue raised by Webworld's suit for a declaratory judgment and by the Sheriff's cross-points, motions for rehearing, and motion for en banc reconsideration, and because the resolution of this legal

issue is important to the county's exercise of its power to regulate SOB's, I re-urge my previous dissent on the merits of this case.

## SHERIFF'S CROSS–POINTS BROUGHT FORWARD ON APPEAL

The Sheriff argues in his Third Motion for Rehearing and Motion for En Banc Reconsideration that the majority did not properly consider his cross-points in overturning the JNOV rendered in his favor in its March 22, 2007 opinion and remanding the case to the trial court to enter judgment in accordance with the verdict in favor of appellant, Webworld. The majority expressly states in its current opinion in response to that motion and the motion for en banc reconsideration that it remains unnecessary for it to reach the Sheriff's cross-points. As I stated in my March 22, 2007 dissent, I agree with the Sheriff. I, therefore, re-urge that dissenting opinion, as set forth below.

The Sheriff argues that, as a matter of law, Webworld failed to comply with the applicable regulations for obtaining a Class I SOBP for 22562 Interstate I–45 North in response to its March 16, 2001 application and, therefore, he, as Sheriff, had no duty to issue the permit. The Sheriff contends that this Court should have considered his no-evidence objections not on the basis of whether there was sufficient evidence to support the jury's answers to the questions in the jury charge—to which he had objected at trial—but on the basis of the proper application of the law to the facts.

### Relevant Regulations

The applicable regulations are "The Regulations for Sexually Oriented Busi-

---

**2.** "The court of appeals *must* hand down a written opinion that is as brief as practicable but that addresses every issue raised and nec-

essary to final disposition of the appeal." Tex.R.App. P. 47.1 (emphasis added).

nesses in the Unincorporated Area of Harris County, Texas and Application for a CLASS I Permit" adopted August 6, 1996. HARRIS COUNTY, TX., ORDINANCE 83–1812 (Aug. 6, 1996) (hereinafter referred to as "Harris County Regulations"). A Class I sexually oriented business enterprise is "a commercial enterprise the primary business of which is the offering of a service or the selling, renting or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer" that "conduct[s] business regularly at a specific location."

As the Sheriff points out, section VIII(a) of the Harris County Regulations requires that "[t]o obtain a Class I ... SOBP, a complete application shall be filed with the Sheriff," in the form provided by the Sheriff, whose contents are specified for a Class I SOBP in sections VIII(b) and (e). Section XII(e)(2) of the regulations states that "[t]he SOBP shall be denied upon the finding by the Sheriff of any of the following facts," including a finding that "the enterprise does not meet all the requirements of these regulations" or a finding that "[t]he applicant has knowingly made a misleading statement of a material fact by omitting or falsifying information in the application for the SOBP."

Section VIII(b)(2) requires that an applicant for a Class I SOBP provide, in relevant part:

(2) A general description of the enterprise, which shall include the address of the enterprise and the services and products which will be offered.

(i) A Class I SOBP shall be valid only for the address provided in the application.

Section VIII(e) requires that an applicant for a Class I SOBP also provide, in relevant part:

(4) A certification that the proposed enterprise will be located:

(i) a minimum of one thousand five hundred (1,500) feet from any child care facility, school, dwelling, hospital, public building, public park, or church or place of religious worship;

. . . .

(iv) This subsection shall apply only to property uses in existence at that location at least thirty (30) days prior to the date of application.

**Preservation of Error**

The Sheriff pled, *inter alia,* that Webworld had knowingly made a misleading statement of material fact by providing an incorrect address for the SOBP it sought on its March 19, 2001 application and by falsely certifying that the SOB was a minimum of 1,500 feet from a dwelling, namely the residence over the Melvins' parrot shop, for whose use as dwelling permits had been sought and plans developed, and where the Melvins had stayed from time to time.

The jury was asked (1) whether Webworld's proposed enterprise was located a minimum of 1,500 feet from "any dwelling in existence at that location at least (30) days prior to Webworld's application dated March 19, 2001" when "residence" was defined as "personal presence at some place of abode. . . ."; (2) whether Webworld "knowingly made a misleading statement of material fact by omitting or falsifying information" in its March 19, 2001 application for an SOB; (3) whether the Sheriff "arbitrarily" denied Webworld's March 19, 2001 application; and (4) "whether the Sheriff acted in good faith in denying Webworld's March 19, 2001 application."

The Sheriff objected that jury questions 1, 3, and 4 improperly applied the law, there was no evidence to support the sub-

mission of the questions to the jury, and the questions would lead to inconsistent answers. Additionally, the Sheriff specifically argued that question 1 was "incorrect because it doesn't explain that a dwelling also includes intended or planned use of property" and that questions 3 and 4 were not supported by the pleadings. In short, the Sheriff complained that the jury charge got the law wrong in a case where the jury was being improperly asked to construe the applicable ordinances and apply the legal and factual criteria for issuance of an SOBP. The trial court overruled each of the Sheriff's objections. The Sheriff also requested an instructed verdict at the conclusion of the case, which was likewise overruled. Finally, in his motion for JNOV, the Sheriff urged, "[T]here is no evidence that the Sheriff arbitrarily denied Webworld's permit or acted in bad faith in light of the fact that the Melvins had indicated in 1996 that they would use the property as a residence." The trial court granted the motion for JNOV.

The Sheriff argues on appeal that the trial court properly took the case away from the jury after the verdict because, having been given an erroneous charge over counsel's objections, the jury responded with erroneous answers. The Sheriff contends he preserved error, and he urges us to apply the law the jury should have applied and the trial court ultimately did apply. I agree with the Sheriff's position.

Texas Rule of Civil Procedure 324(c) provides:

When judgment is rendered non obstante verdicto or notwithstanding the findings of a jury on one or more questions, the appellee may bring forward by cross-point contained in his brief filed in the Court of Appeals any ground which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been rendered by the trial court in harmony with the verdict, including although not limited to the ground that one or more of the jury's findings have insufficient support in the evidence or are against the overwhelming preponderance of the evidence as a matter of fact. . . .

The failure to bring forward by cross-points such grounds as would vitiate the verdict shall be deemed a waiver thereof. . . .

TEX.R. CIV. P. 324(c); *accord* TEX.R.APP. P. 38.2(b).

The Sheriff objected to the charge, moved for an instructed verdict, and moved for judgment notwithstanding the verdict. He then brought forth by cross-points his grounds for vitiating the verdict, namely the legal insufficiency of the evidence and the factual insufficiency of the evidence to support the jury's answers to questions 1, 3, and 4. I would hold that the Sheriff preserved his legal sufficiency issues. *See Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex.1991) (legal sufficiency challenge may be preserved by objection to charge and motion for instructed verdict). Therefore, I would address the Sheriff's argument that the evidence was legally insufficient to prove that he had a duty to issue an SOB to Webworld.

**Legal Sufficiency of the Evidence to Support the Verdict**

*Standard of Review*

A "no evidence," or legal insufficiency, point of error is a question of law that challenges the legal sufficiency of the evidence to support a particular fact finding. *County of El Paso v. Dorado*, 180 S.W.3d 854, 862 (Tex.App.-El Paso 2006, pet. denied). Because "no evidence" points are questions of law, they are reviewed *de novo*. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327

(Tex.2002). In conducting a legal-sufficiency review, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003). However, "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.... [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). Thus, a no-evidence challenge will be sustained when " '(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.' " *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)).

### Webworld's Compliance with Applicable Regulations

On May 15, 2001, Webworld received a letter from the Sheriff denying its SOBP because (1) the SOB was within 1,500 feet of a dwelling; (2) Webworld had knowingly made a misleading statement by providing an incorrect address for the SOB; and (3) Webworld had knowingly made a misleading statement because the proposed building would not fit in the lot area.

Webworld had to prove that it complied with all applicable regulations to prevail in the trial court on its demand that the Sheriff be ordered to issue a Class I permit for an SOB at 22562 Interstate I–45

North in response to its March 19, 2001 application. *See* Harris County Regulations §§ XII(a), (e)(2). Therefore, I would inquire whether the evidence established Webworld's compliance with the applicable Harris County Regulations cited by the Sheriff as grounds for denial of the SOBP.

### Address

Section VIII(b)(2)(I) of the county regulations provides, "A Class I SOBP shall be valid only for the address provided in the application." It is undisputed that both Webworld's original March 16, 2001 application and its amended April 25, 2001 application certified the address for which the permit was sought as "22562 Interstate I–45 N." Subsequently, Webworld obtained an address for the enterprise, 22565 Interstate North. On June 19, 2001, Webworld wrote the Sheriff acknowledging that the address was wrong on its SOB application, and it advised the Sheriff of the new address. However, it did not file an amended application for an SOBP for 22565 Interstate I–45 North.

I would hold that Webworld failed to comply with the regulatory requirement that it list a correct address in its SOBP application and that the Sheriff had no duty to issue a permit for construction of an SOB at an admittedly incorrect address. Webworld filed no application for an SOBP listing the correct address. For this reason alone, I would sustain the JNOV. To hold otherwise, in my view, is to impose an extra-statutory—and indeed contra-statutory—burden of due diligence on the Sheriff to ascertain the correct address for which an SOBP is sought and to issue the permit if an SOB at *that* address would satisfy county regulations. I do not believe the Harris County Regulations impose such a duty on the Sheriff; I believe its plain language imposes a duty of strict compliance on the applicant for an SOBP.

*Location Within 1,500 Feet of a "Residence"*

Section VIII(e)(4) of the regulations provides that an applicant for a Class I SOBP must provide a certification that the proposed enterprise will be located "a minimum of one thousand five hundred (1,500) feet from any child care facility, school, dwelling, hospital, public building, public park, or church or place of religious worship." Section VIII(e)(4) also provides, however, that "[t]his subsection shall apply only to property uses in existence at that location at least thirty (30) days prior to the date of application." Section III(*o*) provides that a "dwelling" is "a house, duplex, apartment, townhouse, condominium, mobile home or any other building *used as a residence.*" (Emphasis added).

Webworld certified that the proposed enterprise would be located a minimum of 1,500 feet "from any child care facility, school, dwelling, hospital, public building, public park, or church or place of religious worship." Since this requirement applies only to property uses in existence at least 30 days prior to the date of application, and since the Melvins had obtained a permit to develop the space over their parrot shop for a dwelling in 1996, had used the space as a dwelling from time to time, and had commenced plans for the development of the property as a dwelling more than 30 days before Webworld applied for a SOBP, Webworld's certification that the enterprise would be located a minimum of 1,500 feet from a dwelling necessarily implied that it did not consider the Melvins' activities sufficient to constitute the "use" of the property as a dwelling.

The Sheriff argues that, because the word "use" is not defined in the regulations, the ordinary meaning of the word should be applied. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993). He further argues

that the term "use" is broad and means to "put or bring into action or service; to employ for or apply to a given purpose." *Mount Pleasant I.S.D. v. Lindburg*, 766 S.W.2d 208, 211 (Tex.1989); *see also U.S. Steel Corp. v. Fiberglass Specialties, Inc.*, 638 S.W.2d 950, 954 (Tex.App.-Tyler 1982, no writ). Therefore, he argues that the term extends to a property owner's present activities to develop a property for a planned or intended use, including the Melvins' seeking permits and developing plans for using the space over their parrot shop as a residence. He also contends, as he did below, that the instruction to Jury Question 1 was improper because it did not instruct the jury to consider that a dwelling includes activities undertaken pursuant to an intended or planned use of property. Webworld responds that the Melvins' *intent* to create a dwelling is not an element of the Ordinance and is thus irrelevant to the inquiry of whether the parrot shop was a dwelling whose use as a residence was in existence at least 30 days before the date of the SOB application.

I agree with the Sheriff that the prohibition against issuing a permit for an SOB within 1,500 feet of property used for certain specified purposes that are "in existence at that location at least thirty (30) days prior to the date of application" applies not only to fully realized uses of the property but also to property whose plans for an intended use are "in existence" at least 30 days prior to the date of the application for an SOB. Otherwise, as the Sheriff points out, the County could be required to issue a permit for an SOB within 1,500 feet of a school that had been in construction for two years but that was not complete 30 days prior to the date of application.

However, I would hold that there must be objective proof of the intended ultimate use of the property for a purpose specified

in section VIII(e)(4) of the Harris County Regulations and objective proof that, at least 30 days prior to the date of the application for an SOBP, activities were underway to prepare the location for the intended ultimate use. In other words, there must be objective proof that an intended use of the property was actually "in existence" for a given purpose 30 days before the SOBP was sought and that a putative intended use is not a mere pretext for denial of a SOBP. The requirement that the use be "in existence" 30 days prior to the application for an SOBP seems clearly to have been intended to preclude the use of a pretext to deny an SOBP, but there is nothing in the language or the purpose of the regulation to suggest that the Commissioners intended that a use "in existence" must be a fully realized use, and, indeed, any such construction of the term would lead to the absurd results posited by the Sheriff.

The evidence is undisputed that the Melvins applied for a permit expressing their written intention to construct their residence and business in the building in 1996 and that they employed active means towards that intent by constructing plans for the building and by residing over the parrot shop from time to time. Webworld, not the Sheriff, had the burden of proof that the SOBP it sought complied with all regulations. I would hold that Webworld failed to bear its burden of proof that the application it sought was not within 1,500 feet of a residence whose use was in existence 30 days prior to Webworld's application and that Webworld therefore, failed to satisfy the requirements for obtaining the Class I SOBP it sought.

Because I would hold that Webworld failed to comply with the Harris County Regulations both by listing an incorrect address in its March 19, 2001 SOBP application and by falsely certifying that the proposed enterprise would not be located within 1,500 feet of property whose planned use as a dwelling had been in existence for at least 30 days prior to the date of the application, I would also hold that the Sheriff had no duty to issue the SOBP and, indeed, was required to deny it. *See* Harris County Regulations §§ XII(e)(2),(3). Therefore, I would not reach the Sheriff's third cross-point, *i.e.,* whether the proposed enterprise would fit on the property for which the permit was sought.

### Conclusion

I would affirm the judgment of the trial court.